## SYLVESTER G. MANION v. JEWEL TEA COMPANY.[1]

December 29, 1916.

Nos. 20,004—(165).

**Slanderous words.**

1. It is slanderous *per se* to say to the customers of a salesman that he is a thief and ought to be sent to the penitentiary and that he failed to turn in money of his employer.

**Liability of master for slander by servant.**

2. The question whether an employer is liable for a slander uttered by an employee is determined by the same principles applicable to other torts. The employer is liable if the slander is uttered by the employee in the course of his employment, with a view to furthering the employer's business, and not for a purpose personal to himself.

[1]Reported in 160 N. W. 767.

Note.—For authorities passing on the question of liability of master for slander by servant, see notes in 9 L.R.A.(N.S.) 929; L.R.A. 1916E, 774.

The question of liability of corporation for slander by agent or employee, see note in 21 L.R.A.(N.S.) 873.

A discussion of the question of master's liability to exemplary damages for libel by servant, see note in 48 L.R.A.(N.S.) 62.

**Same — words of manager to customers obtained by plaintiff.**

> 3. Within this rule, the defendant is liable for a slander of plaintiff, a former employee, uttered by a managing agent while trying to hold customers procured by plaintiff while in defendant's employ, and which is calculated to prevent plaintiff from taking the customers with him.

**Exemplary damages — evidence.**

> 4. There was evidence from which a jury might find exemplary damages in this case.

Action in the district court for Hennepin county to recover $2,800 for slanderous words uttered by defendant's manager resident at Minneapolis while acting within the scope of his authority. The case was tried before Steele, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Swan, Stinchfield & Richards,* for appellant.

*R. E. Plankerton,* for respondent.

HALLAM, J.

Defendant is an Illinois corporation with its principal place of business in Chicago and a branch in Minneapolis. Its business is dealing in tea, coffee and other merchandise. Its merchandise is sold by employees who drive delivery wagons from house to house, soliciting trade as they go, and as an inducement to purchase it gives away premiums, which are usually chinaware or other merchandise, or coupons which are exchangeable for merchandise. The driver is intrusted with the premiums or coupons. Plaintiff was in the employ of the defendant in Minneapolis as a driver, with a regular territory assigned to him. T. A. Hansen was manager of the Minneapolis branch. He was subject to directions from the head office in Chicago, but there was no one higher in authority in Minneapolis or in Minnesota. It was part of his business to extend the company's sales and to hold the customers of the company against competition, and he gave out the territory to the canvassers and directed their work. Hansen discharged plaintiff. Some time later plaintiff brought this action against defendant for slander uttered by Hansen, alleging that Hansen charged that "Manion is a thief. He stole coupons from

the Jewel Tea Company." The court submitted to the jury the questions whether Hansen made such statements, and, if so, whether defendant was liable therefor. The jury gave plaintiff a verdict. Defendant appeals from an order denying its motion in the alternative for judgment or for a new trial.

1. The evidence goes to show that Hansen made charges on three occasions, as follows:

First. Two other employees, anxious about their own tenure, because of the discharge of plaintiff, went to Hansen and asked why plaintiff "got fired." Hansen replied: "Manion is a thief, he took the company's coupons and he is a bad character all around * * * you needn't be afraid you will get fired because that is the reason he got fired."

Second. Mrs. Johnson was one of plaintiff's customers. After plaintiff's discharge he went to work for another dealer and was trying to take with him Mrs. Johnson's patronage. Defendant also was trying to hold her trade. Defendant's representative called on her and she reported to Hansen that this man had told her Manion was a thief and that she was as bad as he was if she continued to trade with him. She resented the imputation that she was in any sense a thief, and Hansen directed another agent named Plaut to go and see her and "fix the matter up * * * and at the same time to try and retain Mrs. Johnson's patronage." Plaut testified that Hansen told him to tell her "that it was not meant that she was a thief, but that Manion was a thief."

Third. Mrs. Blethen was a customer of plaintiff. Two representatives of defendant called on her after plaintiff was discharged and she refused to buy of them, and Hansen went personally to see her to "fix up" the matter. He asked the reason she had refused to buy of defendant. She told him that it was because they spoke disrespectfully of plaintiff. Hansen said he wanted she "should still continue taking coffee from the house." She testified that "he said that Mr. Manion had left the company for good and they had fired him and they were going to put him to the penitentiary, he ought to have been there years ago, and he had been drinking and was in the saloons a great share of his time. And he said 'you see, look at this book.' And he showed me two sides of the book where there were neighbors in my immediate neighborhood that were taking coffee the same as I had for years from Mr. Manion, and

he said that they had paid him, he believed they had paid him and he did not turn in the money."

This evidence goes to prove substantially the allegations of the complaint. No attempt was made to prove the truth of any of the charges. The words alleged were words directly disparaging plaintiff in his employment or calling, and were actionable *per se*. It is not material whether they charged a crime or not. Beek v. Nelson, 126 Minn. 10, 147 N. W. 668.

The next question is, was the defendant answerable for the slander uttered by Hansen? The court charged the jury that "the defendant would be liable for the words of Hansen if Hansen spoke them in the course of his employment by defendant and with a view to furthering the business of the defendant, and not for a personal purpose to himself." The charge correctly states the law of this state. The liability of a corporation for slander uttered by its agent is determined by the same rule as its liability in case of a libel published by its agent, and this is the same rule both as to compensatory and exemplary damages, as is applied generally in determining the liability of a principal for the torts of an agent. Roemer v. Jacob Schmidt Brewing Co. 132 Minn. 399, 157 N. W. 640. The rule was correctly stated by the court. See Smith v. Munch, 65 Minn. 256, 68 N. W. 19.

3. The court submitted to the jury the question whether the words spoken by Hansen were spoken in the course of his employment and with a view to furthering the business of the defendant, and not for a purpose personal to himself. The jury by its verdict found this issue in favor of the plaintiff. As to the second and third occasions we entertain no doubt that the finding of the jury is sustained by the evidence. In each case the words were uttered by Hansen while engaged in trying to hold trade for defendant, and with the distinct purpose of accomplishing that end.

4. Exception is taken to the charge of the court permitting the jury to assess exemplary damages. After the court had so charged, counsel for the defendant asked the court to charge that there was no evidence of actual malice and that there can be no exemplary damages. The court said: "I shall refuse that charge. Of course, I might say to you there is no evidence of actual malice as applying to exemplary damages,

but malice may be inferred from the words that it is claimed were spoken, that is, if they were spoken." The rule is well settled that exemplary damages can be allowed only where the slander is uttered wilfully or wantonly and with actual malice. Peterson v. Western Union Tel. Co. 75 Minn. 368, 372, 77 N. W. 985, 43 L.R.A. 581, 74 Am. St. 502. Counsel contrues the remark of the court just quoted as a ruling that there was no evidence from which the jury could find the existence of actual malice. If the court so ruled, the ruling was both wrong and inconsistent with the charge he had given. But we do not construe the remark of the court as counsel does. To us it seems to mean that there was no direct evidence of malice, but that there was evidence from which malice might be inferred. This statement was quite as favorable to defendant as the facts of the case would warrant.

Order affirmed.