Dave **ROGNLIEN**, Appellant,

v.

Jim **CARTER**, et al., Respondents.

No. C5–89–281.

Court of Appeals of Minnesota.

Aug. 1, 1989.

Review Denied Sept. 21, 1989.

John C. Hottinger, Andrew A. Willaert Jr., Hottinger Law Offices, Mankato, for appellant.

Debra E. Schmidt, Kevin W. Eide, Hauge, Eide & Keller, P.A., Eagan, for respondents.

Heard, considered and decided by SCHUMACHER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Dave Rognlien appeals from a grant of summary judgment to his former employer, Bob Carter Ford, Inc. and others. We affirm in part, reverse in part and remand for trial.

### FACTS

This case arises out of the employment relationship between appellant Dave Rognlien and respondents Bob Carter Ford, Inc. and others. On April 21, 1987, Jim Carter, president of Bob Carter Ford, contacted Rognlien and asked him if he would be interested in becoming the new general manager of Bob Carter Ford. Prior to that time, Rognlien was the owner and manager of Viking Motors, a wholesale car dealership. Rognlien told Jim Carter he was interested in the position, and the two met on the evening of April 21 to discuss the details of the job.

The parties met for a second time on April 24, 1987. Rognlien alleges that during this meeting Jim Carter stated he owned 80 percent of Bob Carter Ford's stock, and that Bob Carter, Jr., Jim's brother and the ex-general manager of Bob Carter Ford, would not be returning to take over the general managership. Rognlien also claims that he requested a written contract with Jim Carter but that Carter said no such contract was necessary since he was "a man of his word."

In his deposition, Jim Carter stated he could not recall the specifics of his meetings with Rognlien. He admitted, however, that Rognlien's account of the meetings could be accurate. Jim Carter stated that his standard interviewing practice was to let potential employees know that they

do not have to worry about their jobs "as long as the job gets done."

Jim Carter wrote a follow-up letter to Rognlien on April 24 summarizing their meeting of the same day. The letter states that Jim Carter owned 80 percent of Bob Carter Ford's stock, and that Bob Carter, Jr. would not have any involvement in the dealership in the future. In fact, Jim Carter owned no stock in the dealership at that time. The letter also states that Rognlien would be paid on an annual basis.

Rognlien began working as general manager for Bob Carter Ford on May 1, 1987. At or about that time Rognlien was given an employee handbook providing information about Bob Carter Ford's policies and benefits. Jim Carter stated in his deposition that he was not happy with Rognlien's job performance and therefore asked Bob Carter, Jr. to come back to manage the dealership. Rognlien was terminated by Jim Carter on June 15, 1987, six weeks after commencing to work for Bob Carter Ford.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

### I. *Standard of Review.*

A district court may grant summary judgment if the pleadings and other documents before the court "show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." On appeal from summary judgment, it is the function of the appellate court to determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. The rule in Minnesota is summary judgment is proper when the nonmoving party fails to provide the court with specific facts indicating that there is a genuine issue of fact. In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 855 (Minn.1986) (breach of employment contract) (citations and footnote omitted).

■ Despite his request, Rognlien was never given a written employment contract, and the terms of Rognlien's oral employment contract are silent as to termination. Such circumstances render Rognlien an "at-will" employee who could be terminated without cause at any time. *See Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962); *Harris v. Mardan Business Systems, Inc.,* 421 N.W.2d 350, 354 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. May 18, 1988). Rognlien nevertheless claims that various well-established exceptions to the at-will doctrine apply in this case, and that he could be terminated only for cause.

### II. *Unilateral Contract Modification.*

In *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983), the supreme court ruled that a promise of employment may be enforceable if the requirements for formation of a unilateral contract are satisfied. There must be a definite offer by the employer which is communicated to and accepted by the employee for valuable consideration. *Id.* at 626–27. The issue here is whether Jim Carter made a sufficiently definite offer to Rognlien for permanent employment.

■ Rognlien claims that Jim Carter's alleged representation that Rognlien would not have to worry about his job so long as he did good work constitutes an offer of employment subject to dismissal only for good cause. We agree. This case is similar to *Eklund v. Vincent Brass and Aluminum Co.,* 351 N.W.2d 371, 376–77 (Minn. Ct.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984) in which we reversed a grant of summary judgment to an employer because the employee alleged sufficient facts to overcome the presumption that his employment was at-will. As in *Eklund,* Rognlien gave up his former job to take the

position from which he was ultimately fired. Rognlien, like the plaintiff in *Eklund,* also was worried about job security and requested an arrangement assuring him permanent employment: Rognlien asked Jim Carter for a written employment contract but was allegedly told that no such contract was necessary since Carter was a man of his word, and Carter allegedly told Rognlien that he would not have to worry about his job so long as he did good work. These statements, if true, are sufficiently definite as a matter of law to create an offer of permanent employment. The grant of summary judgment as to this claim is therefore reversed.

■ We note, however, that an employment contract cannot be inferred from Carter's follow-up letter or Rognlien's employee handbook. The letter's reference to an annual salary structure is alone insufficient to create a contract, and the handbook specifically states that Bob Carter Ford could "terminate the employment of any employee at any time." *See Lee v. Sperry Corp.,* 678 F.Supp. 1415, 1418 (D.Minn.1987) (explicit disclaimer and statement of employment-at-will negates existence of contract requiring cause for discharge); *Harris,* 421 N.W.2d at 354 (right to buy stock over a five-year period does not imply a right to employment for the same period). In addition, if the trier of fact should find that Rognlien was not promised permanent employment, no covenant of good faith and fair dealing will be implied into the employment relationship. *Corum v. Farm Credit Services,* 628 F.Supp. 707, 715 (D.Minn. 1986) (plaintiff relied on same evidence to prove permanent employment and existence of implied good faith covenant).

### III. *Promissory Estoppel.*

■ Rognlien also claims he is entitled to relief under the doctrine of promissory estoppel should his contract claim fail. The necessary elements for a cause of action under this doctrine are:

1. The defendant made a promise;

2. The defendant expected or should have reasonably expected the promise to induce substantial and definite action by the plaintiff;

3. The promise did induce such action; and

4. The promise must be enforced to avoid injustice.

*See Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981) (quoting *Restatement of Contracts* § 90 (1932)).

Rognlien produced evidence that he relied on Jim Carter's oral representations regarding permanent employment when he gave up his job as a wholesale car dealer. We therefore conclude he is entitled to present this as an alternative claim. *See Eklund,* 351 N.W.2d at 378.

### IV. *Employer Fraud.*

Rognlien finally alleges that Bob Carter Ford has committed employer fraud for which he may recover. Rognlien claims that Jim Carter's representations that he owned 80 percent of Bob Carter Ford's stock and that Bob Carter, Jr. would not have any involvement with the dealership in the future constitute actionable fraud.

To establish a claim for fraud, a plaintiff must show:

(1) A false representation of a material past or present fact susceptible of knowledge;

(2) The defendant either knew it to be false or asserted it as his own knowledge without knowing whether it is true or false;

(3) The defendant intended the plaintiff to act on his representation;

(4) The plaintiff was induced to act in reliance on the representation; and

(5) The plaintiff suffered damages which were the proximate cause of the representation.

*See Hurley v. TCF Banking & Savings, F.A.,* 414 N.W.2d 584, 586 (Minn.Ct.App. 1987) (citing *Davis v. Re–Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967)).

■ A representation or expectation as to future events is not a sufficient basis to support an action for fraud merely because the represented act did not take

place. *Belisle v. Southdale Realty Co.,* 283 Minn. 537, 539–40, 168 N.W.2d 361, 363 (1969). Therefore, Jim Carter's representation or statement that his brother would not be returning to Bob Carter Ford is insufficient to support Rognlien's claim for fraud since it relates to a future event, or more specifically, a "nonevent." Absent any allegation that Jim Carter knew that his brother would return at the time he made the statement, that statement cannot support Rognlien's claim of fraud. *See Hayes v. Northwood Panelboard Co.,* 415 N.W.2d 687, 690 (Minn.Ct.App.1987) (when promise is made in good faith with expectation of carrying it out, fact that it is subsequently broken does not give rise to cause of action for fraud), *pet. for rev. denied* (Minn. Jan. 28, 1988).

Jim Carter's representation regarding his ownership interest in the dealership, however, satisfies the present fact requirement. While Rognlien may have relied on that representation in deciding whether to accept Carter's offer, he nevertheless fails to show how he was damaged by the falsity of that representation. Rognlien was damaged by the termination of his employment, which was not a proximate or foreseeable result of Carter's representation of stock ownership.

Rognlien has failed to allege sufficient facts to support his claim of employer fraud, and the trial court properly granted summary judgment on this claim.

## DECISION

On the issue of Rognlien's employment status, we reverse and remand for a determination of whether Rognlien was indeed offered employment so long as he did a good job. If he was, the trial court must determine whether Bob Carter Ford breached the parties' employment agreement thereby causing Rognlien to suffer damages. Rognlien shall be allowed to present his alternative claim of promissory estoppel on remand as well in the event he is unsuccessful on his breach of contract action. Finally, we affirm the trial court's grant of summary judgment on Rognlien's claim of employer fraud.

Affirmed in part, reversed in part and remanded.