Norma Mae O'BRIEN, Plaintiff,

v.

A.B.P. MIDWEST, INC., Defendant.

Civ. No. 3–92–121.

United States District Court,
D. Minnesota,
Third Division.

Dec. 28, 1992.

768

Jordan S. Kushner, Minneapolis, MN, for plaintiff.

Steven P. Bogart, Reinhart, Boerner, Van Dueren, Norris & Rieselbach, Milwaukee, WI, and John D. Nelson, Dorsey & Whitney, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

On February 7, 1992, plaintiff Norma Mae O'Brien commenced this action in Ramsey County District Court, against defendant A.B.P. Midwest, Inc. ("ABP"), alleging discrimination under state law and claims under state common law theories. On February 27, 1992, ABP removed the action to this Court. On May 22, 1992, O'Brien filed her First Amended Complaint. Now before the Court is ABP's Motion for Summary Judgment on O'Brien's First Amended Complaint.

### Background

Plaintiff Norma Mae O'Brien is a fifty-four year old female resident of Minnesota. O'Brien commenced her employment with ABP on or about September 14, 1989. At all times pertinent to this action, O'Brien was employed at ABP's "Au Bon Pain" restaurant, located in the World Trade Center, 30 East 8th Street, St. Paul, Minnesota. O'Brien generally worked as a sales person, both in the restaurant itself, as well as at a mobile food cart which Au Bon Pain operated in the World Trade Center Atrium. O'Brien generally had favorable employment reviews and was promoted to shift supervisor in September 1990.[1]

O'Brien's employment with ABP started its downward spiral in the fall of 1991. In October 1991, O'Brien sought a meeting with Shelly Schreiner, Au Pain's general manager, to discuss her work schedule, specifically a request that her work hours be reduced so that she would work less overtime hours. Schreiner and O'Brien did not have the re-

quested meeting. On or about November 13 1991, O'Brien approached and met with ABP's district manager Jerry Bray. Bray allegedly told O'Brien to "do whatever you have to do, you will always have a job with Au Bon Pain." O'Brien Dep., at 77–78.

On or about November 15, 1991, Schreiner decreased O'Brien's scheduled hours from 40 per week to 30 per week. On November 19, 1991, O'Brien approached Schreiner as she sat in Au Bon Pain's dining room. O'Brien discussed the issue of working hours with Schreiner, but nothing was resolved. On November 20, 1991, Schreiner, verbally and in a subsequent Disciplinary Action Report, accused O'Brien of being loud, disruptive and insubordinate to her during their conversation on the previous day.[2] O'Brien was given a two-day suspension.

On or about December 5, 1991, O'Brien contacted Ray Steck, ABP's President, at ABP's Madison, Wisconsin office, seeking to gain his assistance in resolving her problems with Schreiner. Steck met with O'Brien and Schreiner in St. Paul, on December 10, 1991. On December 17, 1991, O'Brien was terminated. On the "Employee Change Information" form, Schreiner stated that O'Brien had been terminated for an alleged "breach of security/failure to perform duties." Apparently, Schreiner accused O'Brien of leaving the store safe open. The reason for the termination was disclosed to other ABP personnel. This action followed.

In her First Amended Complaint, O'Brien alleged seven separate causes of action. In *Count I*, O'Brien alleged that ABP had discriminated against her on the basis of age and sex, in violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03 (1990) ("MHRA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (1988) ("ADEA"), Title VII, 42 U.S.C. § 2000e–3, and St. Paul Legislative Code Ch. 183.[3] In

---

1. On September 16, 1991, O'Brien received a performance evaluation from her supervisor Shelly Schreiner. O'Brien received 157 out of a possible 200 points on the ranking scale used by Au Bon Pain, received a .$35 raise and was considered by Schreiner to be "a definite asset to Au Bon Pain."

2. O'Brien's contends that she was not loud, disruptive or insubordinate.

3. Specifically, O'Brien alleged the following discriminatory acts by ABP: (1) her termination; (2) her suspension; (3) favoritism shown to a younger male shift supervisor; (4) an unconsented search of her person and property by the manager of ABP, done in the course of his em-

*Count 2,* O'Brien alleged that ABP, through its agents, defamed her. In *Count 3,* she claimed that ABP had negligently inflicted emotional distress on her. In *Counts 4 and 5,* O'Brien claimed that ABP had breached its contract of employment with her. In *Count 6,* O'Brien alleged that ABP's conduct breached the implied-in-fact covenant of good faith and fair dealing. Finally, in *Count 7,* O'Brien alleged that ABP had intentionally inflicted emotional distress upon her.

## Discussion

### I. The Standard of Decision

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Stated in the negative, summary judgment will be denied where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the movant bears the burden of bringing forward sufficient evidence to establish that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct.

1348, 1357, 89 L.Ed.2d 538 (1986); *Liberty,* 477 U.S. at 255, 106 S.Ct. at 2513; *Trnka v. Elanco Prod.,* 709 F.2d 1223, 1225 (8th Cir. 1983). Where a moving party, with whatever it provides the court, makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of his pleadings; rather, the adverse party's response must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514. That is, the party opposing the motion for summary judgment must make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial. *Fischer v. NWA, Inc.* 883 F.2d 594, 599 (8th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). Where a party opposing the motion fails to establish the existence of an essential element, all other facts are immaterial and the moving party is entitled to judgment as a matter of law. *Id.*

### II. Count 1

In Count 1, O'Brien alleges that ABP engaged in numerous acts of wrongful conduct, including reducing her work hours, disciplining her, and terminating her on the basis of her age, and sex.[4] She asserts that these acts of discrimination violate the ADEA, Title VII, the MHRA and the St. Paul Legislative Code. ABP seeks summary judgment on Count 1 in its entirety.

To resist the motion for summary judgment, O'Brien must establish a prima facie case of age and sex discrimination. *Matson v. Cargill, Inc.,* 618 F.Supp. 278, 281 (D.Minn.1985). To do so, O'Brien must show that ABP terminated her "under circumstances which give rise to an inference of unlawful discrimination." *Halsell v. Kimber-*

---

ployment; (5) the allegedly false statements regarding her suspension and termination; and (6) certain obscenities and a statement by the male shift supervisor to the effect that O'Brien was a lesbian.

4. The only employment action which will be discussed herein is O'Brien's termination. Although O'Brien alleges that numerous acts by ABP employees constitute unlawful discrimina-

tion, Amended Complaint ¶¶ 9–18, the factual record would not support a jury finding that the acts set forth in ¶¶ 9–16 and 18 were the result of unlawful discrimination. That O'Brien's charges focus on her termination is supported by the parties' arguments at the December 16, 1992, hearing: both parties discussed only her termination.

ly–Clark Corp., 683 F.2d 285, 289 (8th Cir. 1982) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)), cert. denied, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). In a discriminatory treatment case, the usual method of proving an inference of discrimination is a three-step process involving a prima facie case, rebuttal, and a showing of pretext. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The McDonnell Douglas analysis applies to claims under Title VII, the ADEA and the MHRA. See Halsell, 683 F.2d at 289 (ADEA); Danz v. Jones, 263 N.W.2d 395, 398–99 (Minn.1978) (MHRA). The proof necessary will vary depending upon the circumstances of the case.

In the summary judgment context, where an employee establishes a prima facie case of discrimination, the burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the employment decision. If the employer meets its burden of production, the plaintiff must offer sufficient rebuttal evidence to create a genuine issue of material fact as to pretext. Matson v. Cargill, 618 F.Supp. 278, 283 (D.Minn.1985). The plaintiff bears the ultimate burden of persuasion throughout.

## A. Age Discrimination

■ Because O'Brien alleges that she was terminated because of her age, she must prove the following four elements to establish a prima facie case of age discrimination:

(1) She was at least 40 years old at the time of her termination;

(2) she was performing her job at a level that met ABP's legitimate expectations;

(3) despite her performance in her job, she was terminated; and

(4) that the employer tried to replace her with someone else who could provide the same service or skill.

Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir.1987), cert. denied, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); see Halsell, 683 F.2d at 291; Bruss v.

Toro, 427 N.W.2d 17, 19 (Minn.Ct.App.1989) (elements under the MHRA).

■ The Eighth Circuit, in Johnson v. Minnesota Historical Soc., 931 F.2d 1239 (8th Cir.1991), indicated that "[s]ummary judgments should seldom be used in cases alleging employment discrimination." Id. at 1244. The court reasoned that summary judgment would rarely be appropriate because discrimination is difficult to prove by direct evidence, thereby justifying a simplified form of proof from a claimant in order to create an inference of discrimination. Id. The court concluded that summary judgment would be appropriate "only in those rare instances where there is no dispute of fact and where there exists only one conclusion. The evidence must point one way and be susceptible of no reasonable inference sustaining the position of the non-moving party." Id.

Under the high standard set forth in Johnson, the Court concludes that summary judgment is inappropriate on O'Brien's age discrimination claims under the ADEA and the MHRA. First, it is undisputed that O'Brien is a member of the protected class and that she was terminated. Second, despite ABP's stated reason for the termination, facts in the record would warrant a jury concluding that she was meeting all legitimate expectations. Finally, O'Brien has produced facts indicating that although no one person was hired to take over her job, ABP sought someone to provide the skills and services which she provided. See Peyton Aff., ¶ 4. In short, there are sufficient facts in the summary judgment record to support an inference of age discrimination.

Although ABP has articulated a legitimate, non-discriminatory reason for its action, that fact does not entitle it to judgment in its favor. To prevail on summary judgment, ABP must demonstrate that O'Brien has produced no evidence which suggests that age may have been the reason for her termination.

O'Brien has submitted evidence which, if believed by a jury, could support a determination that age was the reason she was discharged. First, there is a genuine issue of material fact as to whether ABP's proffered

reason is legitimate and non-discriminatory. O'Brien has testified that she did not leave the safe door open and there is evidence that she was satisfactorily performing her job duties. *See Steinbach v. Northwestern Nat'l Life Ins. Co.*, 728 F.Supp. 1389, 1393 (D.Minn.1989). Second, until ABP satisfies its burden of production, the burden does not shift to O'Brien to rebut that evidence. Because a jury could determine that ABP's proffered reason was illegitimate, summary judgment is inappropriate.

### B. Sex Discrimination ·

■ O'Brien also alleges that ABP's discriminatory treatment of her was based upon her sex. To withstand summary judgment then, O'Brien must adduce facts supporting an inference of sex discrimination. In other words, ABP will be entitled to summary judgment only if it shows that O'Brien has not adduced facts which support an inference of discrimination. *Steinbach*, 728 F.Supp. at 1393.

As discussed *supra*, summary judgment is appropriate where "the evidence points one way and is susceptible of no reasonable inference sustaining the position of the non-moving party." *Johnson*, 931 F.2d at 1244. Although O'Brien is a member of the protected class, there is nothing in the record which would allow a jury to infer that ABP engaged in unlawful sex discrimination. Unlike the question of age discrimination, the factual record shows only that employees, both males and females, were subject to arbitrary management practices and that personal favoritism dominated many of the relationships between the restaurant's management and its employees. However objectionable these practices, O'Brien has failed to establish that her sex played a role in any of the actions of which she complains. Accordingly, ABP is entitled to summary judgment on O'Brien's sex discrimination claims.

### III. Count 2

In Count 2, O'Brien alleges that ABP, acting through its agents, defamed her. ABP seeks summary judgment on Count 2, contending that the statement by Auston was made outside the scope of his employment and that as a matter of law the other two statements were not defamatory.

The following statements are the basis of O'Brien's claim for defamation:

1. Michael Auston's June 4, 1991 statement, allegedly made in the scope of his employment, that the defendant was a "lesbian";

2. Schreiner's statements, both orally and in writing, regarding the events occurring on November 19, 1991;

3. Schreiner's statements that O'Brien had left open the door to the safe.

Amended Complaint, ¶ 25–26.

■ To prove a claim of defamation, a plaintiff must show a false statement about him or her which is "published" (communicated) to a third party and which tends to harm the plaintiff's reputation and lower him or her in the estimation of the community by exposing him or her to public hatred, contempt, ridicule, or degradation. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980); *Phipps v. Clark Oil & Ref. Co.*, 408 N.W.2d 569, 573 (Minn.1987).

### A. Auston's Statement

On June 4, 1991, Michael Auston, an ABP shift supervisor and O'Brien's peer, allegedly asked Sharon Paul, an employee at ABP, "what are you two lesbians doing tonight?" It is uncontested that the persons referred to as "two lesbians" were Paul and O'Brien. ABP argues that it cannot be held liable for Auston's statement because as a matter of law it was not defamatory, because it was not made within the scope of Auston's employment, and because O'Brien was not injured in any compensable way. O'Brien retorts that whether the statement was defamatory is a jury question. O'Brien has not, however, responded to ABP's argument that Auston was not acting within the scope of his employment.

■ Where a plaintiff alleges that a fellow employee defamed her, the employer may be held liable only if the defamation occurred in the scope of the employee's

duties.[5] *Manion v. Jewel Tea Co.*, 135 Minn. 250, 160 N.W. 767, 768 (1916). An employee acts within the scope of his employment, where his or her conduct furthers the interests of the employer. *Ottem ex rel. Ottem v. United States*, 594 F.Supp. 283, 287 (D.Minn. 1984). In her deposition, O'Brien testified that Auston's statement was made within the scope of his employment because he "he was at work. He was on the job." O'Brien Dep., at 114. This statement is insufficient as a matter of law to establish that Auston acted within the scope of his employment. As nothing else in the factual record would support a jury concluding that Auston made the statement in furtherance of ABP's interests, the Court concludes that ABP is entitled to summary judgment on this portion of O'Brien's claims for defamation.[6]

### B. Schreiner's Statements About O'Brien's Behavior

The other two statements set forth in Count 2 pertain to O'Brien's conduct at Au Bon Pain. ABP contends that summary judgment is appropriate because as a matter of law the statements were not defamatory. ABP argues that the statements relating to O'Brien's loud, disruptive and insubordinate behavior, and to leaving the restaurant safe open are "not the type of statements that can be construed to injure any reputation plaintiff may have had as a competent restaurant cashier."[7] (Mem.Supp.Summ.J., at 10.) ABP further argues that the statements could not have injured O'Brien's business reputation.[8]

Generally, words can be divided into those that cannot possibly have a defamatory meaning, those that are reasonably susceptible to a defamatory meaning as well as an innocent one, and those that are clearly defamatory on their face. *Phipps v. Clark Oil & Refin. Corp.*, 408 N.W.2d 569, 573 (Minn. 1987) (quoting *Church of Scientology of Minnesota v. Minnesota State Medical Ass'n Foundation*, 264 N.W.2d 152, 155 (Minn. 1978)). In making this determination, the statement should be given its obvious and natural meaning. *Church of Scientology*, 264 N.W.2d at 155.

ABP's motion for summary judgment on Schreiner's statements will be denied. It is undisputed that Schreiner's written and oral statements are chargeable to ABP. In addition, there is a jury question as to whether the statements are false. Finally, based upon the record now before the Court, Schreiner's statements are reasonably susceptible to both an innocent and a defamatory meaning. Because the words could have a defamatory meaning, ABP has failed to meets its burden of showing that it is entitled to summary judgment as a matter of law. At trial, O'Brien will also have the burden of proving that she was damaged by the defamation, however, that question has not been raised herein.[9]

Similarly, ABP is not entitled to summary judgment on O'Brien's claim for defa-

---

5. The Court rejects O'Brien's contention that ABP is liable for "negligently" failing to control Auston's behavior or failing to correct his behavior generally.

6. Having decided that Auston's comment cannot be charged to ABP, the Court need not and does decide whether O'Brien has raised a genuine issue of material fact as to the other elements of an action for defamation.

7. ABP contends that Schreiner's statement that O'Brien was "pounding on the table" was made during an arbitration hearing with the Minnesota Human Rights Department. (Mem.Supp. Summ.J., at 12.) ABP further contends that the parties agreed that any statements made at the hearing would not be used as evidence in any lawsuit. *Id.; see* Bogart Aff., Exh. D. In her deposition, O'Brien testified that Schreiner made

that comment in the Au Bon Pain dining room on the morning of January 13, 1992. O'Brien Dep., at 188. Under the current record then, it is not clear that the statement was made only at the arbitration hearing. Accordingly, O'Brien may rely on the alleged "pounding on the table" statement, if she proves that it was published outside the arbitration hearing.

8. Apparently, ABP is addressing defamation *per se*. Where defamatory statements affect a person in her trade, business or profession, defamation "per se" exists and damages are presumed. *Stuempges*, 297 N.W.2d at 255.

9. The Court also notes that although ABP raised the affirmative defense of "qualified privilege" in ¶ 51 of its Answer to the First Amended Complaint, it did not raise the privilege issue in its motion for summary judgment.

mation *per se.* To state a claim for defamation *per se,* a plaintiff must show that the defamatory statements were ones affecting his or her conduct of profession, trade or business. *Anderson v. Kammeier,* 262 N.W.2d 366, 372 (Minn.1977). Where a statement has that affect, damages are presumed and may be awarded without additional proof. *Id.*

■ In this case, the undecided questions of material fact regarding whether the statements were defamatory prevents the Court determining as a matter of law that the statements were not defamatory *per se.* Moreover, because the statements relate to the way in which O'Brien conducts herself as an employee and as a counter worker, they could be said to relate to her trade or profession.

### IV. Count 3

In Count 3, O'Brien alleges that ABP negligently inflicted emotional distress upon her by allegedly making malicious and defamatory statements about her. ABP seeks summary judgment on this claim, contending that as a matter of law, she has failed to state an actionable claim for negligent infliction of emotional distress.

■ In Minnesota, a plaintiff may bring a claim for negligent infliction of emotional distress only where the plaintiff is

a person within the zone of danger of physical impact who reasonably fears for her or his own safety and who consequently suffers emotional distress with resultant physical injury.

*Stadler v. Cross,* 295 N.W.2d 552, 553 (Minn. 1980). Based upon the well-reasoned decision in *Meyer v. Tenvoorde Motor Co.,* 714 F.Supp. 991, 994–96 (D.Minn.1989) (Magnuson, J.), this Court concludes that because O'Brien was never within the zone of danger of "physical impact," she may not maintain a cause of action for negligent infliction of emotional distress. Her ability to recover for emotional distress must depend on whether she is successful on other of claims.[10]

### V. Count 4

In Count 4, O'Brien alleges that Jerry Brey, acting within the scope of his employment, created an oral contract of employment with her and that ABP breached that contract when it reduced her hours, suspended her, and terminated her.[11] In her Memorandum in Opposition to the motion for summary judgment, O'Brien also contends that certain provisions of ABP's employees' handbook also created a unilateral contract of employment, which ABP also breached.[12]

■ In Minnesota, employment relationships are governed by the "at-will" rule, which states that an employment relationship may be ended by either the employer or employee at any time, for any reason, or for no reason at all. An employee hired for an indefinite duration is one which is said to be "at-will," even where that employment is characterized as permanent or lifetime. *LeNeave v. North American Life Assur. Co.,* 854 F.2d 317, 318 (8th Cir.1988). Where an employee seeks to prove that her employment relationship was other than at-will, the employee must fit the relationship within one of the exceptions recognized by Minnesota courts.[13] Summary judgment is appropriate

**10.** As discussed in *Meyer,* damages for emotional distress may be recovered if O'Brien prevails on her defamation claims, *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 793 (1975), *cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976), and/or her claims under the MHRA.

**11.** Specifically, O'Brien alleges that on or about November 13, 1991, Bray told her "do what you have to do. You will always have a job at Au Bon Pain." Amended Complaint, ¶ 31.

**12.** Although ABP contends that O'Brien's "handbook" claim was not alleged in her Amended Complaint, the Court notes that Count 5 of the Amended Complaint states a claim based upon

the handbook provisions. For purposes of this motion, the Court construes this language as setting forth a handbook claim. *See infra* Part VI.

**13.** Minnesota courts have recognized generally four basic exceptions to the at-will rule: (1) the "handbook exception," in which a unilateral contract which may be created by provisions in an employee handbook; (2) where independent consideration beyond personal employment services creates a contract limiting discharge to good cause; (3) promissory estoppel; and (4) where an employee is terminated for refusing to violate a law. *Phipps v. Clark Oil & Ref. Corp.,* 408 N.W.2d 569, 571 (Minn.1987); *Hunt v. IBM*

where, even accepting a plaintiff's version of the facts as true, the plaintiff cannot establish a modification of the at-will employment doctrine. *Corum*, 628 F.Supp. at 715 (collecting cases).

 O'Brien's oral contract claim falls on the stake of the "offer" element of the *Pine River* test. Not every utterance of an employer qualifies as an "offer." 333 N.W.2d 622, 630 (Minn.1983). To be an offer, a statement must objectively manifest an employer's intention to alter the at-will relationship. *Id.* at 627; *see Michaelson v. Minnesota Min. & Mfg. Co.*, 474 N.W.2d 174, 179 (Minn.Ct.App.1991), *aff'd*, 479 N.W.2d 58 (Minn.1992) (mem.). Bray's statement "you will always have a job at ABP" is not sufficiently definite to constitute an offer in the contract sense. No matter what O'Brien's subjective beliefs about what Bray intended, no jury could conclude that Bray's statement manifested an intent to offer O'Brien permanent employment.[14] *See Dumas v. Kessler–McGuire Funeral Home, Inc.*, 380 N.W.2d 544, 548 (Minn.Ct.App.1986) (statements that an employer and employee would "retire together" deemed insufficient); *Corum v. Farm Credit Services*, 628 F.Supp. 707, 715 (D.Minn.1986) (statements that plaintiff would have "job security" was not an offer). *But cf. Eklund v. Vincent Brass & Alum. Co.*, 351 N.W.2d 371, 373 (Minn.Ct.App.), *rev. denied*, (Nov. 1, 1984) (statement to employee who said he would only accept offer of permanent employment deemed an offer). Because Bray's statement was as a matter of law insufficient to constitute an offer, ABP is entitled to summary judgment on O'Brien's claim for breach of an oral employment contract.

## VI. Count 5

In Count 5, O'Brien alleges that ABP "disciplined and terminated [her] wrongfully and in retaliation for following the guidelines, procedures, and rights provided for and promised by [ABP]." Amended Complaint, ¶ 40. Specifically, O'Brien contends that the grievance procedure created a contract term providing that she would not be terminated for bringing a complaint to the attention of management and that this term was breached when she was terminated, allegedly for grieving about her work hours. The only possible conclusion is that in Count 5, O'Brien is attempting to state a claim for breach of contract based upon a provision in ABP's employee handbook.[15]

The grievance provision of ABP's employee handbook lists three steps for handling grievances and states:

> It is the policy of the Company that all employee suggestions and complaints shall be given full consideration. There will be no discrimination or recrimination against any employee because he or she presents any problem, complaint, or suggestion!

Def.'s Mem.Supp.Mot.Summ.J., Exh. B, at 7. The Handbook also contains a broad disclaimer:

> The employee manual is provided to you for informational purposes only. It con-

*Mid America Employees' Federal*, 384 N.W.2d 853, 856 n. 7 (Minn.1986). Contracts allegedly created by oral statements are governed by the same test as that set forth for the handbook exception in *Pine River State Bank v. Mettille*, 333 N.W.2d at 626–27. *Hughlett v. Sperry Corp.*, 650 F.Supp. 312, 314 (D.Minn.1986).

14. O'Brien relies on *Rognlien v. Carter*, 443 N.W.2d 217 (Minn.Ct.App.1989), *rev denied*, (Sept. 21, 1989), and *Eklund* for the principle that Minnesota courts have upheld oral contracts for permanent employment. O'Brien's point is little more than a truism. Both *Rognlien* and *Eklund* involve statements and actions which were specific enough to allow a jury to conclude that the employer intended to alter the at-will relationship. For example, in *Rognlien,* the employer made statements about ·job security in response to the plaintiff's expressed desire to arrange for permanent employment. 443 N.W.2d at 220. In addition, both *Rognlien* and *Eklund* were influenced by the fact that the plaintiff left current employment to take the position from which they were subsequently terminated. *Id.,* 351 N.W.2d at 376–77. Neither decision is sufficiently analogous to warrant denying summary judgment in this case.

15. At the December 16, 1992, hearing on the motion for summary judgment, counsel for O'Brien represented to the Court that Count 5 states a claim for breach of contract, rather than retaliatory discrimination and that any confusion was the result of less than artful drafting. Reading Count 5 broadly, the Court will assess the facts alleged therein as a breach of contract claim.

tains guidelines. Although ABP Midwest believes in the practices, policies, and procedures described, they are not intended to create a contract between the Company and its employees ... ABP Midwest and its employees have an employment relationship which is known as employment at will.

*Id.* at 1.

■■■ As discussed *supra*, "a promise of employment on particular terms of an unspecified duration, if in form of an offer, and if accepted by the employee, may create a binding unilateral contract." *Pine River*, 333 N.W.2d 622, 626 (Minn.1983). To successfully state a claim of wrongful termination based upon the "handbook" exception, a plaintiff must prove that (1) the statement constituted an "offer" (2) the offer was communicated to the employee; and (3) the employee accepted the offer and provided the requisite consideration. *Id.* at 626–27.

■■■ ABP's central contention is that as a matter of law the grievance provision is not an "offer" to form a unilateral contract. It argues that the disclaimer precludes the handbook from stating any offer. Under Minnesota law, an employer may prevent its handbook from stating an offer by including a contract disclaimer in its employee handbook as a valid expression of its intentions regarding the employment relationships with its employees. *Michaelson*, 474 N.W.2d at 180; *Audette v. NE State Bank of Minneapolis*, 436 N.W.2d 125, 127 (Minn.Ct.App. 1989). A disclaimer, however, may not protect an employer when other provisions in the handbook indicate a contrary intent.

■■■ ABP is entitled to summary judgment only if the facts show that there was no offer as a matter of law. In light of the ambiguity created by the presence of both the broad disclaimer and the equally unequivocal non-retaliation provision, this Court cannot conclude that ABP clearly established

an intent to retain its at-will relationship, at least in regard to grievances.[16] Because reasonable minds could differ on the meaning of the grievance provision, it for the finder to fact to resolve this ambiguity.[17] *See Security Sav. Bank v. Green Tree Accept., Inc.*, 739 F.Supp. 1342, 1346 (D.Minn.1990); *Petition of Minnesota Power & Light Co.*, 435 N.W.2d 550, 563 (Minn.Ct.App.1989), *rev. denied* (Apr. 19, 1989). Accordingly, ABP's motion for summary judgment on Count 5 will be denied.

## VII. Count 6

In Count 6, O'Brien alleges that Bray's statements to her and the grievance procedures in the employee handbook gave rise to an "implied covenant of good faith and fair dealing." (Mem.Opp'n Mot.Summ.J., at 31), and that ABP breached this covenant by disciplining her and later terminating her employment. Amended Complaint, ¶ 43. ABP seeks summary judgment on Count 6, contending that Minnesota courts have not implied such covenants into employment contracts as a matter of law, and that the facts do not support a conclusion that such a covenant was implied as a matter of fact.

■■■ It is clear that implied-in-law covenants of good faith and fair dealing are not recognized in Minnesota. *Johnson v. Minnesota Historical Soc.*, 931 F.2d 1239, 1245 (8th Cir.1991). However, courts in Minnesota have recognized that in certain situations, an implied-in-fact covenant may arise from the actions of the parties and the surrounding circumstances. *See Stowman v. Carlson Cos.*, 430 N.W.2d 490, 494–95 (Minn. Ct.App.1988); *Eklund*, 351 N.W.2d at 378. Where a plaintiff seeks to assert an implied-in-fact covenant of good faith and fair dealing, she must show that the parties intended to modify the at-will relationship by creating a covenant. *Corum*, 628 F.Supp. at 715.

■■■ The Court has already determined that ABP is entitled to summary judgment

---

16. Unlike the handbook in this case, the handbooks at issue in *Audette* and *Michaelson* did not contain such clear statements of contrary intent.

17. If the disclaimer were not present in the ABP handbook, there would be a genuine issue of material fact as to whether the provision in the

handbook constituted an "offer" within the *Pine River* exception. Whether the grievance provision, when read in light of the disclaimer, is nonetheless an offer is a genuine issue of material fact for the finder of fact to resolve at trial.

on O'Brien's oral contract claim, but that the finder of fact must decide if ABP's employee handbook created a unilateral contract to not fire O'Brien for bringing complaints to management's attention. Nothing in that determination, however, raises a genuine issue of material fact as to whether ABP generally promised to discharge O'Brien only for cause or in good faith. *See Hunt v. IBM Mid America Employees Fed. Credit Union,* 384 N.W.2d 853, 858 (Minn.1986). In addition, a review of the facts and circumstances surrounding ABP's employment of O'Brien as a matter of law exhibits the absence of an implied-in-fact covenant. *But cf. Eklund,* 351 N.W.2d at 378. Accordingly, ABP's motion for summary judgment on Count 6 will be granted.

## VIII. Count 7

In Count 7, O'Brien alleges that the actions of ABP's agents, conducted in the scope of their employment, were extreme and outrageous acts which were intentional and reckless and resulted in severe emotional distress. ABP seeks summary judgment on this claim.

■■■ To state a sufficient claim for intentional infliction of emotional distress under Minnesota law, a plaintiff must establish each of four (4) elements: (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct was intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 439 (Minn.1983). "Extreme and outrageous conduct" is that conduct which is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* (quoting *Haagenson v. National Farmers Union Prop. & Cas. Co.,* 277 N.W.2d 648, 652 n. 3 (Minn.1979)). Emotional distress is "severe" and thus actionable where it is so severe that "no rea-

sonable [person] could be expected to endure it." *Hubbard,* 330 N.W.2d at 439 (quoting Restatement (Second) of Torts, § 46, comment j (1965)). The operation of the tort is limited to cases involving particularly egregious facts. *Id.*

■■■ Application of the foregoing principles to the facts of this case mandates a conclusion that ABP is entitled to summary judgment on Count 8. Taken as a whole and read in the light most favorable to O'Brien, the actions of ABP's agents were not so atrocious as to be outside the boundaries of decency. ABP's actions may have been harassing, perhaps even intentionally so, but they do not fall within the specifically narrow construction given to acts stating a claim for intentional infliction of emotional distress.[18] *See Corum v. Farm Credit Serv.,* 628 F.Supp. 707, 719 (D.Minn.1986) (citing *Eklund v. Vincent Brass & Alum. Co.,* 351 N.W.2d 371, 379 (Minn.Ct.App.1984), *review denied,* (Nov. 1, 1984)).

Moreover, the emotional distress which O'Brien suffered was not sufficiently severe to state a claim for intentional infliction of emotional distress. Whatever the severity of O'Brien's response to her suspension, termination and treatment by ABP's agents, it does not rise to the level of being so severe that "no reasonable person could be expected to endure it." Restatement (Second) of Torts, § 46, comment j (1965). Without understating the obvious impact of the events on O'Brien's work and personal life, the distress which she suffered was not materially different from that suffered by other individuals who are terminated from their employment under adverse conditions.[19] *See Eklund* 351 N.W.2d at 379.

■■■ O'Brien further argues that in this case, Schreiner's power over her and knowledge of her "vulnerable" position were such that Schreiner's acts were, in this case, out-

---

18. The Court notes the parallelism between its order denying O'Brien's motion to amend her complaint and add a claim for punitive damages and the conclusion herein. The conduct of which O'Brien complains is insufficiently outrageous to satisfy either Minn.Stat. § 549.191 or the requirements of the tort of intentional infliction of emotional distress.

19. O'Brien alleges as a result of the defendant's conduct, she suffered an episode of depression, headaches, loss of sleep, upset stomachs and a yeast infection.

rageous. O'Brien's argument is without merit. Although a defendant may be liable for the tort where he or she engages in extreme and outrageous conduct in the face of knowledge that the injured party is particularly susceptible, because of some physical or mental peculiarity, to suffering an unreasonably severe distress, *see Cafferty v. Garcia's of Scottsdale,* 375 N.W.2d 850, 853–54 (Minn.Ct.App.1985), that principle does not change the result in this case. Knowing that a person has some characteristic which makes him or her particularly susceptible to suffering severe emotional distress may preserve the tort even where the plaintiff's distress is unreasonably extreme. Knowledge of susceptibility does not allow the tort to be maintained where as in this case, the distress suffered is not sufficiently severe. Moreover, nothing in the record indicates that the Schreiner had actual knowledge of any peculiarity which made O'Brien particularly susceptible to emotional distress. Accordingly, ABP is entitled to summary judgment on Count 7.

### Conclusion

Accordingly, based upon the files, records and proceedings herein, including the arguments of counsel, IT IS HEREBY ORDERED that:

1. Defendant ABP Midwest's Motion for Summary Judgment as to Count 1 (Doc. No. 62) is GRANTED as to O'Brien's claims of sex discrimination is DENIED in all other respects;

2. ABP's Motion for Summary Judgment as to Count 2 (Doc. No. 62) is GRANTED as to the statement of Michael Auston, and is DENIED in all other respects;

3. ABP;s Motion for Summary Judgment as to Count 5 (Doc. No. 62) is DENIED;

4. ABP's Motion for Summary Judgment as to Counts 3, 4, 6 and 7 (Doc No. 62) is GRANTED.