Arnold ABERMAN, Appellant,

v.

MALDEN MILLS INDUSTRIES, INC.,
et al., Respondent.

No. C3-87-1313.

Court of Appeals of Minnesota.

Nov. 10, 1987.

Richard G. Hunegs, Michael L. Weiner, DeParcq, Hunegs, Stone, Koenig & Reid, P.A., Minneapolis, for Aberman.

Michael J. Wahoske, Dorsey & Whitney, Minneapolis, for Malden Mills Industries.

Heard, considered and decided by FORSBERG, P.J., and WOZNIAK and STONE,* JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from summary judgment in favor of respondents Malden Mills Industry, Inc. and Aaron Feuerstein. Appellant Aberman claims that Feuerstein, as an officer of Malden Mills and in an individual capacity, promised him lifetime employment. Aberman brought this action after he was terminated in 1981. He argued both breach of contract and promissory estoppel. In ordering summary judgment, the trial court found that any promises made by Feuerstein were neither definite enough to create a lifetime employment contract, nor were they definite enough to support a promissory estoppel claim. The trial court also dismissed the claims against Feuerstein individually, finding no support for the allegation that he acted in his individual capacity. Appellant argues there are sufficient facts to create a jury question of whether Malden Mills and Feuerstein individually promised him lifetime employment. We affirm.

## FACTS

Aberman was a manufacturer's sales representative, working primarily in the textile industry. From 1967 to 1981, he represented Malden Mills, as well as other textile manufacturers. His commissions from Malden Mills comprised from 25% to 50% of his total earnings from all manufacturers.

Aberman's initial agreement with Malden Mills was set forth in a letter from Malden Mills dated April 28, 1967. He was to represent Malden Mills in Minnesota, Wisconsin and Winnipeg, and receive a 3% commission on all net sales shipped to his customers.

In 1969, Aberman traveled to New York for a meeting with Feuerstein and another company officer. At this meeting, Feuerstein told Aberman that his commission was being cut from 3% to 2%. The reason for this decrease was to save money and appease other representatives, who were unhappy that his 3% commission rate was higher than theirs. Aberman's performance had been good and there is no suggestion his commission rate was cut because of poor performance.

Aberman agreed to continue representing the company at the lower commission rate. He claims he agreed to this lower rate in return for Feuerstein's promise that he would always represent Malden Mills or Feuerstein individually.

Aberman argues that testimony taken at his deposition supports his claim. He could not remember any specific words used by Feuerstein, but he characterized Feuerstein's alleged promise in various ways:

He kind of put his arm around me and said—well, I don't even remember the exact words but it really implied that do this thing for me and I will always take care of you, you will always be with Malden.

\*    \*    \*    \*    \*    \*

What Mr. Feuerstein was saying that, "if you do this we are offering you something, we are offering you security and you will always have the security that you're going to have Malden Mills to represent" and that was a lot to me at that time.

\* \* \* I guess I expected them, if they are going to cut me, then to give me something for it or do something for it. I argued that it just wasn't right to cut that type of anything.

\*    \*    \*    \*    \*    \*

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

*  *  * I was giving up a lot monetarily in exchange for what I perceived to be security of having this kind of a line and with income and so on for a number of years and that was important to me, security at that time. I was younger but I wasn't a young man and that was very important to me. I guess that's why I said ultimately okay.

\*  \*  \*  \*  \*  \*

I was given very specific terms. I was told that I was going to be a lifetime sales representative of Malden Mills in exchange for my taking a lesser commission.

Aberman continued as sales agent for Malden Mills from 1969 through 1981, earning a straight 2% commission on all sales. The entire textile industry's business tapered off in the late 1970's and early 1980's. In the spring of 1981, Malden Mills informed Aberman that it no longer needed him as a sales representative. He was told that, although his performance was satisfactory, Malden Mills could save more money by having a noncommissioned salaried employee take over his territory. Since that time, he has engaged in other business endeavors and has rendered no further services to Malden Mills or to Feuerstein.

## ISSUE

Are there sufficient facts to raise a question of whether appellant was promised lifetime employment?

## ANALYSIS

Summary judgment is appropriate where there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal, this court views the evidence most favorably to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 647 (1954).

### I.

Unless otherwise agreed between the parties, the employment relationship is at-will; Malden Mills could summarily dismiss Aberman, and he was under no obligation to remain as sales representative. *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). To establish that an employment contract is a lifetime agreement or not otherwise terminable except for cause, Aberman must establish that Malden Mills clearly intended to create such a contract. *Corum v. Farm Credit Services*, 628 F.Supp. 707, 713–14 (D.Minn.1986). *See also Pine River State Bank v. Mettille*, 333 N.W.2d 622, 629 (Minn.1983). Aberman must show objective evidence of Malden Mills' intent and cannot rely on his own subjective belief that they had a lifetime employment contract. *Corum*, at 714–15.

■■ Courts are reluctant to find a lifetime employment contract because such alleged contracts are often "oral, uncorroborated, vague in important details and highly improbable. Accordingly, the courts have erected a veritable array of obstacles to their enforcement." *Degen v. Investors Diversified Services, Inc.*, 260 Minn. 424, 428–29, 110 N.W.2d 863, 866 (1961) (quoting *Lee v. Jenkins Brothers*, 268 F.2d 357, 368 (2nd Cir.1959)). Absent an additional express or implied stipulation of duration of employment, the following terms indicate only an at-will contract: "permanent employment," "life employment," and "as long as the employee chooses." *Skagerberg v. Blandin Paper Co.*, 197 Minn. 291, 294–95, 266 N.W. 872, 874 (1936). In addition, general statements of company policy are not definite enough. *Pine River State Bank*, 333 N.W.2d at 626.

■ In this case, Aberman presents no evidence to show a definite intent to create a lifetime employment contract. He cannot recall any specific statements by Feuerstein and resorts to characterizing these statements according to his best recollection. Even what he remembered are only general statements about job security and the company's desire to keep him on indefinitely.

■ Respondent's representations that "I will always take care of you," "we are offering you security," and "[you will be a]

lifetime sales representative" are remarkably similar to the general terms which were deemed insufficient in *Skagerberg*. *Id.*, 197 Minn. at 294–95, 266 N.W. at 874. The court in *Cederstrand* found an employer's promise to give people "job[s] as long as they wished until retirement" did not create a lifetime employment contract. *Id.*, 263 Minn. at 523, 117 N.W.2d at 216. More recently, this court determined that an employer's statement that he and the employee would "retire together" was also insufficient as a matter of law to support a lifetime employment contract. *Dumas v. Kessler & Maguire Funeral Home, Inc.*, 380 N.W.2d 544, 548 (Minn.Ct.App.1986). Consequently, respondents' general statements about job security create nothing more than at-will employment. *See Corum*, 628 F.Supp. at 714; *Pine River State Bank*, 333 N.W.2d at 626; *Degen*, 260 Minn. at 428, 110 N.W.2d at 866.

█ Aberman also relies on his own impression that he deserved a lifetime position because his commission rate was cut. However, his subjective impression cannot be the basis for a court finding that there was a lifetime employment contract. *Pine River State Bank*, 333 N.W.2d at 626; *Cederstrand*, 263 Minn. at 532, 117 N.W.2d at 221. Aberman must instead show Malden Mills' manifestation of intent to form a permanent contract; he has not done this. *See Pine River State Bank* at 626.

## II.

█ Even though Aberman cannot meet the definiteness requirement, he might have been able to establish a lifetime employment contract if he gave up some additional consideration which is uncharacteristic of the employment agreement itself. *Id.* at 627. The "at-will" rule is essentially an evidentiary rather than a substantive rule. Aberman could have submitted evidence of uncharacteristic consideration to overcome the presumption that there was only an at-will contract. *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 376 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984). If Aberman could have presented such evidence, the court then would have considered all other facts, including the intent of the parties, to determine if there had been a permanent employment contract. *Id.*

Aberman specifically argues that his agreeing to reduce his commission rate by one-third was the uncharacteristic consideration. His argument fails for two reasons. First, his commission reduction was not legal consideration. He initially had an at-will contract and he was not entitled to a continuing position or a specific commission rate. Therefore, the only consideration Aberman provided was his continuing to represent Malden Mills and thus foregoing other potential work opportunities. Foregoing work opportunities is not additional consideration as contemplated by this rule. *Corum*, 628 F.Supp. at 713; *Montgomery v. American Hoist & Derrick Co.*, 350 N.W.2d 405, 408 (Minn.Ct.App.1984).

Secondly, even if reducing his commission is consideration, it is not consideration uncharacteristic of the employment relationship. The essence of this evidentiary rule is that the employee must show some unusual consideration so the court has better reason to believe this was no ordinary at-will contract. *See Pine River State Bank*, 333 N.W.2d at 628–29. A commission agreement is inherent in nearly every salesperson's contract and, by itself, is not evidence of anything out of the ordinary. Consequently, Aberman's reduction in commission is no indication the parties contemplated anything more than an at-will relationship.

Aberman cites to a Colorado appellate case in support of his claim that reducing his commission was sufficient additional consideration. *See Beeler v. H & R Block of Colorado, Inc.*, 487 P.2d 569 (Colo.App. 1971). However, under Colorado law consideration serves a substantive function whereas under Minnesota law its purpose is evidentiary. Consequently, any decision by a Colorado court on this issue is not useful in applying Minnesota law.

Aberman alternatively claims that promissory estoppel applies and Malden Mills should be held liable even if there was no

contractual relationship. However, if Malden Mills' promise was not sufficient to support an employment contract, the promise is also insufficient to support a claim of promissory estoppel. *Corum,* 628 F.Supp. at 716.

### III.

Aberman has also brought Aaron Feuerstein into this action, claiming that Feuerstein in his individual capacity offered lifetime employment. Absent some specific evidence to the contrary, an agent making a contract for a disclosed principal does not become a party to the contract. *Hanna Mining Co. v. Minnesota Power and Light Co.,* 573 F.Supp. 1395, 1398 (D.Minn.1983), *aff'd,* 739 F.2d 1368 (8th Cir. 1984); *Kost v. Peterson,* 292 Minn. 46, 49, 193 N.W.2d 291, 294 (1971). In this case, the disclosed principal obviously was Malden Mills. Aberman was always paid by Malden Mills and he never performed services for Feuerstein personally.

We find no basis for Aberman's claim that Feuerstein acted other than in a corporate capacity. The only Minnesota authority cited to support this claim is *Conrad v. Clarke,* 106 Minn. 430, 119 N.W. 214 (1909), which is distinguishable on several important points. Such an unfounded claim serves only to burden opposing counsel and impede the court in its consideration of the relevant issues.

### DECISION

The trial court correctly ruled that appellant presented insufficient evidence to create a fact question of whether he was promised employment for the rest of his life. The trial court also correctly found that Aaron Feuerstein made no promises in his individual capacity.

Affirmed.