**Murray P. HARRIS, Appellant,**

v.

**MARDAN BUSINESS SYSTEMS, INC., et al., Respondents.**

No. C0–87–717.

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied May 18, 1988.

---

Roger J. Magnuson, John D. Thompson, Dorsey & Whitney, Minneapolis, for appellant.

Carol A. Ellingson, Edward M. Laine, Oppenheimer, Wolff & Donnelly, St. Paul, for respondents.

Heard, considered and decided by LANSING, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellant Murray P. Harris sued respondents Mardan Business Systems, Inc., a

Nevada corporation ("Mardan US"); Mardan Business Systems, Inc., an Ontario corporation ("Mardan Canada"); Thomas D. Marshall; and John T. Lumsden for damages arising from the termination of Harris' employment. Harris initially alleged a variety of claims, and then sought to amend the complaint and add claims for breach of contract and punitive damages. Respondents denied the allegations, counterclaimed to force the sale of Harris' stock, and moved for summary judgment on all but Harris' claim for wages.

The trial court granted partial summary judgment and denied leave to amend.[1] Harris' claim for wages and respondents' counterclaim remain for trial. The court entered judgment against Harris on all other claims pursuant to Minn.R.Civ.P. 54.02. Harris appeals. We affirm.

### FACTS

Harris and Marshall were long-time friends and business associates. They met while employed by 3M in Canada. The relationship continued after Marshall left 3M in 1966 to form Mardan Canada. Marshall and his nephew, Lumsden, personally owned and operated Mardan Canada.

Harris stayed with 3M, occasionally hiring out as a consultant. In 1975, Marshall hired Harris to consult with Lumsden. Harris spent one weekend a month for one year tutoring Lumsden on marketing strategy.

During these meetings, Harris visited Marshall at Marshall's home in Canada. Marshall wanted to expand his business to the United States. He often solicited Harris to leave 3M and work as the general manager of a companion corporation to be called Mardan US. Harris was reluctant to leave the security of his job at 3M.

Recognizing the risk involved in leaving 3M, Harris proposed to take a three month leave of absence from 3M in order to "evaluate the position and give Mr. Marshall an opportunity to evaluate my performance." Harris was especially cautious because he wanted this change to be "a final career change." Marshall knew this and offered to employ Harris until Harris decided to retire.

Harris was also concerned with the compensation package. Marshall set Harris' salary at $30,000 per year, plus a ½% sales commission. Marshall also offered an "equity position" consisting of "five percent [of outstanding stock] initially and one percent a year for the next five year period." There was no written employment contract.

■ Marshall incorporated Mardan US in the State of Nevada,[2] and Harris began working in January 1977. The business grew and Harris continued to meet with Marshall and Lumsden from time to time.

On May 31, 1979, the parties met to discuss a written agreement defining "their respective rights and obligations in respect of the ownership and control of their shares in Mardan U.S." The contract signed by the parties provides that Marshall would sell 125 shares (5%) of Mardan US for $125 to Harris and Lumsden each. The contract granted Lumsden and Harris an option to purchase an additional 1% of outstanding shares each year for five years since 1977 for book value. Finally, the contract provided that

> If Lumsden or Harris shall be dismissed by Mardan U.S., Marshall shall purchase and Lumsden or Harris as the case may be, shall sell all of [their stock at book value].

Harris signed the agreement and at some time sent Marshall a check for $125.

Harris continued working and the business grew until late 1980. Marshall and Lumsden became concerned about Harris' performance. They felt Harris simply

---

1. The propriety of the trial court's denial of leave to amend is not at issue. The trial court considered and rejected the proposed amendments on the merits. The complaint, in substance, has already been amended and the added claims dismissed as a matter of law.

2. The rights of respective shareholders are governed by the laws of the state of incorporation, in this case, Nevada. *See Erickson-Hellekson-Vye Co. v. A. Wells Co.,* 217 Minn. 361, 372, 15 N.W.2d 162, 168 (1944). However, because both parties brief and argue Minnesota law, we hold that Minnesota law applies to this case.

could not manage Mardan US on a national scale, and offered him a regional managership at the same salary. Harris refused and was fired shortly after that. This action followed.

## ISSUES

1. Did Marshall breach a fiduciary duty to Harris?

2. Did Marshall breach Harris' employment agreement?

## ANALYSIS

### I.

■ Minnesota clearly recognizes and enforces a duty among shareholders in a close corporation. *Fewell v. Tappan,* 223 Minn. 483, 493–94, 27 N.W.2d 648, 654 (1947), *cited in Evans v. Blesi,* 345 N.W.2d 775, 779 (Minn.Ct.App.1984). In *Fewell,* the court characterized the shareholders as "copartners." *Id.,* 223 Minn. at 494, 27 N.W.2d at 654. Reliance on partnership principles is appropriate since many close corporations are in substance partnerships by another name. Because partners owe a fiduciary duty to other partners, shareholders in a close corporation owe a similar duty. However, since partners do not owe a fiduciary duty to employees, neither should shareholders.

■ In this case, it is clear that Marshall and Harris were not "partners." Marshall capitalized and formed Mardan US himself. Harris did not invest money in the venture. Harris acquired a small percentage of stock as part of his compensation package. It was thought that the stock would appreciate enough to make up for the pay cut Harris took when he left 3M. Harris was not a partner; therefore his relationship with Marshall is not controlled by fiduciary principles.[3]

■ Even if Marshall owed some lesser duty by virtue of Harris' stock ownership, Marshall did not breach that duty because he has been able to demonstrate a legitimate business purpose for his action. *See Wilkes v. Springside Nursing Home Inc.,* 370 Mass. 842, 850–52, 353 N.E.2d 657, 663 (1976). Marshall offered the following reasons for Harris' termination: sales had not progressed as planned, office morale was low, accounts receivable were not pursued, and Harris did not follow proper accounting procedure. Harris has not offered any contrary evidence except to deny he stole money from the corporation. Harris was offered and refused alternative employment as a regional manager at the same pay. Harris has not suggested any less drastic alternative.

Furthermore, there is no evidence that Marshall intimidated Harris and forced him to sign the buy back agreement. Harris states he "had a chance to review [the agreement]," and "was concerned about certain parts" providing for resale on dismissal. Harris told those present that "he would prefer to take the document * * * and study it more thoroughly" before signing. Marshall said "since all parties are present and there has been a delay, let's sign it and get it done." "Being outnumbered, and after some thought, [Harris] decided that, all right, let's get it done."

This exchange does not rise to the level of intimidation found in *Blesi,* 345 N.W.2d at 779–80, where the defendant had a temper tantrum, shouted, slammed doors, and threatened to fire plaintiff's son and liquidate the company. There was no breach of fiduciary duty in this case. Any recovery must be based on breach of the alleged employment agreement.

---

**3.** A leading authority explains
> The rule is well established that directors can remove a corporate officer or employee with or without cause, although the corporation will be liable for breach of whatever rights an employee might have under an employment agreement.
> * * * * * *
> [T]he shareholder who is dismissed from employment almost always finds himself without a remedy if he is not protected by an employment contract or a shareholder's agreement.

F.H. O'Neal & R. Thompson, *O'Neal's Oppression of Minority Shareholders* § 3:06, at 38 (3d ed. 1985) (footnotes omitted). *See also Jenkins v. Haworth, Inc.,* 572 F.Supp. 591 (W.D.Mich. 1983); *Keating v. BBDO Int'l, Inc.,* 438 F.Supp. 676 (S.D.N.Y.1977).

## II.

Construction of unambiguous contracts is a matter of law to be decided by the court. *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 856 (Minn.1986). An employee hired for an indefinite time may be terminated at any time with or without cause. *Id.* Employment contracts which do not specify whether employment is terminable with or without cause are construed to be terminable at will. *Dorso Trailer Sales, Inc. v. American Body & Trailer, Inc.,* 372 N.W.2d 412, 415 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 18, 1985) (citing *Benson Cooperative Creamery Association v. First District Association,* 276 Minn. 520, 526, 151 N.W.2d 422, 426 (1967) and *McGinnis Piano & Organ Co. v. Yamaha International Corp.,* 480 F.2d 474, 479 (8th Cir.1973)).

The terms of Harris' oral employment contract are silent as to termination. Harris' stock agreement mentions dismissal, but contains neither at-will nor for cause terms. The trial court correctly concluded that Harris was employed at will. The next question concerns exceptions to the at-will doctrine.

There are four exceptions to the at-will doctrine which restrict the employer's right to terminate an employee without cause. *Hunt,* 384 N.W.2d at 856 n. 7. Harris claims exception to the at-will doctrine through promissory estoppel. *Grouse v. Group Health Plan, Inc.,* 306 N.W.2d 114, 116 (Minn.1981). Although Harris makes an attractive argument, Minnesota courts have generally required more than mere oral promises of "permanent" employment in order to engraft for cause terms to an at-will contract. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983); *Degen v. Investors Diversified Services, Inc.,* 260 Minn. 424, 428–30, 110 N.W.2d 863, 866–67 (1961); *Skagerberg v. Blandin Paper Co.,* 197 Minn. 291, 266 N.W. 872 (1936); *Simonson v. Meader Distribution Compa-*

*ny, Inc.,* 413 N.W.2d 146, 148 (Minn.Ct. App.1987); *Bakker v. Metropolitan Pediatric, P.A.,* 355 N.W.2d 330, 331 (Minn.Ct. App.1984).

Harris' reliance on *Ecklund v. Vincent Brass & Aluminum Co.,* 351 N.W.2d 371 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Nov. 1, 1984) is misplaced. The plaintiff in *Ecklund* produced a written statement from his employer that they intended the employment to run until the plaintiff chose to retire. *Id.* at 374–75. In this case, the only written documentation of Harris' employment expresses the opposite intent. Harris relies solely on statements allegedly made by Marshall that employment would be permanent. Statements to this effect are insufficient as a matter of law to create an exception to the at-will presumption.

Finally, Harris argues that the existence of his right to buy stock over a five-year period implies a right to employment for the same period. This argument ignores the fact that the stock agreement expressly provided for Harris' termination without providing terms or conditions for termination. As we stated before, employment for an indefinite time is terminable at will. Harris' right to buy stock over a five-year period does not restrict Marshall's right to fire Harris without cause.[4]

## DECISION

The trial court correctly rejected Harris' breach of fiduciary duty and breach of contract claims. Marshall did not owe a fiduciary duty to Harris. Even if Marshall owed some lesser duty, Marshall did not breach the duty because he offered legitimate and unrebutted business reasons to terminate Harris. Marshall did not breach the oral employment agreement since Harris was employed at will, and did not establish that any *recognized* exception to the at-will doctrine applies. Harris' other claims were properly dismissed based on the reasoning already set forth in this opin-

---

**4.** Harris' argument that the stock agreement is illusory is not properly before this court. The trial court reserved the issue of the enforceabili-

ty of the contract. We hold only that the contract, enforceable or not, does not imply a duty of good faith.

ion. The judgment of the trial court dismissing all but Harris' claim for wages, and reserving Marshall's counterclaim for trial is in all respects affirmed.

Affirmed.