**Ben J. FRIEDMAN, Plaintiff–Appellant,**

v.

**BRW, INC.; Craig A. Amundsen, Defendants–Appellees.**

No. 94–1067.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1994.

Decided Nov. 17, 1994.

294

Robert J. Brenner, Minneapolis, MN, argued, for appellant.

Bradley J. Betlach, Minneapolis, MN, argued (Lewis A. Remele, Jr., on the brief), for appellees.

Before LOKEN, Circuit Judge, BRIGHT and WEIS,* Senior Circuit Judges.

* The HONORABLE JOSEPH F. WEIS, JR., Senior United States Circuit Judge for the Third Circuit, sitting by designation.

LOKEN, Circuit Judge.

Ben J. Friedman, an architect and city planner, accepted a salaried position with BRW, Inc. (BRW), and moved from Boston to the Twin Cities. He was terminated after twenty months and now appeals the district court's[1] grant of summary judgment dismissing his claims for breach of contract, promissory estoppel, and fraud under Minnesota law. The principal issue is whether BRW's offer of "permanent" employment meant that Friedman could only be terminated for cause. We affirm.

Friedman contacted BRW in January of 1989, seeking employment after losing his job with a firm in Cambridge, Massachusetts. After a successful interview, Craig Amundsen, an officer of BRW, offered Friedman a position as a senior professional. When Friedman expressed concern as to the nature and term of this position, Amundsen explained in an April 18, 1989, letter:

> This letter is to confirm our discussion yesterday by phone regarding the issues you raised about employment. I have enclosed a copy of our employee handbook for your reference.

> This is a permanent position, with a six month "orientation" period. Although you will be a permanent member of the Planning Studio, from time to time you may be working on building architecture through the Architecture Studio—work permitting. There are other architects in the Planning and Urban Design Studio, including myself, so I understand this concern and will be responsive in a way that makes sense for both of us.

> Your starting salary will be $40,000 annually plus benefits as described previously. Moving expenses will be reimbursed as they are incurred up to $1,500.

> Ben, I realize this move will involve some personal risks for you, and I wouldn't be comfortable if I were in your position with less definition than you have requested concerning the opportunities here for you at BRW.

The BRW employee handbook Friedman received with this letter stated in part:

> Referring to the employment-at-will doctrine, just as you retain the right to terminate your employment for any reason and at any time, BRW also retains the right to terminate your employment for any reason and at any time, but the firm hopes that neither your performance, nor business conditions will require such a step.

Friedman accepted the position and began work the following month. Shortly after he arrived, Friedman received a memorandum from BRW's Human Resources Director stating:

> I would like to clarify a portion of Craig Amundsen's letter of April 18, 1989, to you regarding employment at BRW, Inc. In that letter, Craig referred to your position as "permanent." The correct classification of the position is "regular." (BRW refers to all positions as "regular" or "temporary.") Your position is a regular position in the Planning Studio of BRW, Inc. with a six-month orientation period.

> If you have any questions regarding this, please contact me.

Friedman did not respond to this memorandum.

In January 1991, BRW terminated Friedman along with about one-third of its professional staff in a reduction in force. Friedman then commenced this action, alleging an enforceable promise of "permanent employment" or, alternatively, a false representation upon which he reasonably relied by accepting employment and moving to Minnesota. At his deposition, Friedman explained his understanding of Amundsen's offer of a "permanent" job:

> Q. Tell me if you could what you recall, as best you can recall, what Mr. Amundsen told you with regard to permanent employment?

> A. They were not asking me to move to Minneapolis just to work on a few jobs, the ones that he named. That I would be—and he put in writing a permanent member

---

**1.** The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota.

of the planning studio who from time to time would work in architecture, which is also something else that I was interested in.

Q. Anything else you can recall he said in connection with that subject?

A. The sense of it, as I recall, was that he was reassuring me that this was not short-term, and that's what I was asking for.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did he tell you that he believed permanent employment meant that you wouldn't be terminated and in fact you would have a job until retirement?

A. The discussion did not reach that level.

Q. So that part of the interpretation of permanent employment was sort of your interpretation of it, would that be accurate?

A. Permanent is a common word in the English language and I took it to mean reasonable, its conventional meaning reasonably applied.

\*　　\*　　\*　　\*　　\*　　\*

Q. Mr. Amundsen never defined the word permanent for you, did he?

A. No.

Q. Did you have any discussions with anybody else at BRW before becoming employed about this issue of permanent employment?

A. No.

Amundsen testified that he used the word "permanent" to distinguish the job offer from one for only a single project—a common practice in architecture—and did not intend to provide any guarantee that Friedman would not be terminated.

At the close of discovery, BRW moved for summary judgment. The district court granted the motion, concluding (1) that Amundsen's promise of permanent employment did not alter the at-will employment relationship; and (2) that Friedman had no

reasonable expectation of permanent employment and therefore may not recover under his promissory estoppel and fraud claims.

■　*1. Breach of Contract.* "Under Minnesota law, absent a contrary agreement by the parties, employment is presumed to be at-will, permitting an employer to dismiss an employee for any reason or for no reason at all." *Poff v. Western Nat'l Mut. Ins. Co.,* 13 F.3d 1189, 1191 (8th Cir.1994). The general rule is that an employer's offer of " 'permanent employment,' whether expressed in manuals or otherwise, does not change an at-will contract into one of 'discharge-for-cause-only' or create an implied covenant of discharge only in good faith." *Hunt v. IBM Mid America Employees Fed. Credit Union,* 384 N.W.2d 853, 858 (Minn.1986).

■　The issue in the many cases of this type is whether "the parties, in discussing 'permanent' employment, were referring to lifetime employment and were not, instead, simply making a distinction between temporary or seasonal employment and employment which is steady or continuing although nevertheless terminable at will." *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 628–29 (Minn.1983). Friedman's deposition testimony makes it clear that Amundsen's offer of a "permanent" position was of the latter variety. No one at BRW made any additional representation as to the length of his employment, and BRW's employee handbook unambiguously stated that at-will principles would govern issues of termination. Friedman's failure to protest the Human Resources Director's memorandum is further support for this interpretation of the relationship. In similar circumstances, Minnesota appellate courts have frequently upheld summary dismissal of a breach-of-contract claim. *See, e.g., Aberman v. Malden Mills Indus., Inc.,* 414 N.W.2d 769 (Minn.App.1987). The district court correctly granted summary judgment dismissing Friedman's contract claim.[2]

**2.** *Rognlien v. Carter,* 443 N.W.2d 217 (Minn.App. 1989), upon which Friedman heavily relies, is factually distinguishable. In *Rognlien,* the prospective employee asked for a written contract and was told he could rely instead upon an oral promise that he would have a job as long as "he did good work." Here, Friedman asked for written assurances, received assurances consistent with an at-will relationship, and took the job.

■ *2. Promissory Estoppel.* The effect of the doctrine of promissory estoppel "is to imply a contract in law where none exists in fact." *Grouse v. Group Health Plan,* 306 N.W.2d 114, 116 (Minn.1981). In *Grouse,* the Supreme Court of Minnesota applied the doctrine to a prospective employee who quit his job and turned down another offer in reliance on an employment offer and then was never given a "good faith opportunity to perform his duties." The Court emphasized that, because defendant had offered only an at-will position, damages should be measured by what plaintiff lost in quitting his prior employ and turning down the other offer.

Friedman argues that his promissory estoppel claim should survive BRW's motion for summary judgment, relying on broad language used by the Minnesota Court of Appeals in reversing summary dismissal of promissory estoppel claims in *Eklund v. Vincent Brass & Alum. Co.,* 351 N.W.2d 371, 378 (Minn.App.1984), and *Rognlien,* 443 N.W.2d at 220. However, in both of those cases, the employer had made a sufficiently clear and definite promise of long-term employment that summary dismissal of plaintiff's breach-of-contract claim was reversed as well.

■ In our view, other recent Minnesota cases confirm that the promissory estoppel aspect of the decisions in *Eklund* and *Rognlien* must be limited to similarly definite offers of long-term employ. *See Spanier v. TCF Bank Savings,* 495 N.W.2d 18, 21 (Minn.App.1993); *Harris v. Mardan Business Systems, Inc.,* 421 N.W.2d 350, 354 (Minn.App.1988); *Aberman,* 414 N.W.2d at 772–73; *Corum v. Farm Credit Services,* 628 F.Supp. 707, 715–16 (D.Minn.1986). Promissory estoppel requires proof of a promise, albeit one falling short of creating an enforceable contract. In the employment context, a cause of action for promissory estoppel requires proof of a clear and definite promise of long-term employment terminable only for cause. Absent such a promise, the employee has no reasonable basis for relying on anything other than an at-will relationship. Thus, Friedman's proof of a promise in this case is fatally defective. Moreover, Friedman could not reasonably rely on Amundsen's promise of "permanent" employ given the employee handbook's explicit statement that his employment would be terminable at will.

■ In addition, we note that in *Grouse,* *Eklund,* and *Rognlien,* the plaintiff employee gave up other employment in reliance on the employer's promise of long-term employ. As *Grouse* makes clear, promissory estoppel requires proof of detrimental reliance and damages are measured by the detriment. No Minnesota case has applied the doctrine of promissory estoppel in the employment context absent substantially greater detrimental reliance than actions ordinarily incident to beginning a new job, such as moving to the new employer's locale.

■ *3. Fraud.* Because there was no definite and enforceable promise of permanent employment, Friedman's fraud claims are without merit. We agree with the district court that Friedman cannot prove either an intentional misrepresentation of material fact (as opposed to a statement of future intention), nor reasonable reliance on a false representation.

The judgment of the district court is affirmed.

BRIGHT, Senior Circuit Judge, concurring separately.

Promissory estoppel has a very limited application under current Minnesota cases. I believe those cases are unduly restrictive. Although I do not personally approve of the Minnesota law on promissory estoppel as applied in this case, I agree that we are bound to follow those cases. Thus, I concur in the court's opinion.