_____

No. 95-2660
_____

Judy L. Fox,                          *
                                      *
          Appellee,                   *
                                      *  Appeal from the United States
     v.                               *  District Court for the District
                                      *  of Minnesota.
T-H Continental Limited               *
Partnership,                          *
                                      *
          Appellant.                  *

_____

          Submitted:  December 11, 1995

            Filed:  March 14, 1996
_____

Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,* District Judge.

_____

BOWMAN, Circuit Judge.


     This case involves the doctrine of promissory estoppel.  The
controlling substantive law is that of Minnesota.  Judy L. Fox sued her
former employer, T-H Continental Limited Partnership, after she was
terminated from her position as director of sales at the Mall of America
Days Inn in Bloomington, Minnesota.  Her complaint against T-H asserted
claims of sex discrimination, age discrimination, breach of contract, and
promissory estoppel.  The District Court granted summary judgment in favor
of T-H on the sex and age discrimination claims, but denied summary
judgment on the breach of contract and promissory estoppel claims.  The
case then proceeded to trial on the latter claims.  The jury found for T-H
on

_____

     *The  HONORABLE  WILLIAM  W.  SCHWARZER,  United  States
District Judge for the Northern District of California,
sitting by designation.

Fox's breach of contract claim, but found that Fox was entitled to prevail on her promissory estoppel claim, and returned a verdict in her favor of $46,527.00, to which the District Court added prejudgment interest. The court denied T-H's post-judgment motion for judgment as a matter of law or, alternatively, for a new trial or to amend the judgment. T-H timely appeals, claiming that the District Court erred in denying its motion for judgment as a matter of law. We agree with T-H and now reverse. We hold that Fox failed to make a submissible case on her promissory estoppel claim and therefore that T-H's motion for judgment as a matter of law should have been granted.

## I.

Fox began working for Tollman-Hundley Hotels[1] in 1989. She was promoted several times and, by early 1992, was general manager of a hotel in Denver, Colorado. In February 1992, after Tollman-Hundley sold the hotel where Fox was employed, she was told that her job soon would be terminated. During the next two weeks, Fox was involved in tying up loose ends in the hotel transfer when she was contacted by Tom Wilson, T-H's vice-president for sales and marketing. Wilson asked Fox to join T-H as temporary director of sales at the Mall of America Days Inn. Under the terms of this interim employment agreement, Fox would receive a base salary plus commissions on rooms booked by her sales department. In addition, because the position was only temporary, T-H would allow Fox to live in the hotel, to rent a car as needed, and to be reimbursed for weekend trips back to Colorado every three weeks. Fox was told that permanent employment was conditioned on her satisfactory performance in the temporary position and a successful interview with the new general manager who had not yet been hired. Fox accepted the temporary position and began her new job on March 15,

---

[1]According to appellant, Tollman-Hundley Hotels is "a company separate, but related to T-H." Appellant's Br. at 1.

1992.  She worked as a temporary employee for the next three and one-half months.  Paul Hitselberger was eventually hired as the new general manager and he offered Fox a permanent position as director of sales in June 1992.

The terms of Fox's permanent employment were negotiated over a period of months.  In a June 30, 1992 memorandum, Hitselberger detailed the terms of T-H's offer of permanent employment.  Under this offer, Fox's base salary and commission formula were to remain the same as her temporary position.  But, because this was a permanent position, T-H told Fox that she would have to obtain her own housing, provide her own local transportation, and pay for all personal travel back to Colorado. Hitselberger explicitly stated in the memorandum that this was a "permanent position" and that he hoped Fox would "commit to a long term position." Memorandum from Hitselberger to Fox (June 30, 1992), at 1, 2.  Fox was told that "with no real stretch, there is in excess of $18,000 in available commissions waiting to be earned," and, because the hotel was a "high profile property," Fox would have an opportunity to do well "both financially and professionally, by turning [the hotel] around."  Id. at 2. Although Hitselberger expressed his enthusiasm for a successful employment relationship with Fox, the memorandum contained no provisions on job security and there was no promise of continued employment terminable only for cause.

In late summer, Fox advised Hitselberger that she would accept the permanent position, but the issue of reimbursement of moving expenses remained unresolved.  Fox and Hitselberger had several discussions throughout the late summer concerning payment of relocation expenses. During these discussions, Hitselberger learned that Fox was considering other employment opportunities.  He told Fox to stop pursuing these other employment opportunities.  Hitselberger apparently was concerned that Fox would move to Minnesota at T-H's expense and then accept employment elsewhere.  Consequently, Hitselberger advised Fox that T-H would pay for the

moving expenses only if Fox made a written commitment to stay in the director of sales position at least three months after relocation or repay the moving expenses if she left within three months of her move.  On October 7, 1992, Fox executed a written unilateral agreement committing to these terms:

> This will confirm my intention to remain with Tollman-Hundley Hotels for a minimum of three months from the date of my move.
>
> I realize that the company is going to considerable expense to pay my moving expenses and I agree to reimburse them for these expenses should I leave prior to three months after I move or if I am terminated due to theft or dishonesty.
>
> It is certainly my intention to remain with the company for much longer than the above three months.  I have enjoyed being employed by Tollman-Hundley for over three years and am looking forward to a continued long term relationship.
>
> /s/ Judy Fox

Memorandum from Fox to Hitselberger (Oct. 7, 1992), at 1.

No one at T-H made any representations as to the duration of Fox's continued employment.  In fact, at the time Fox executed this unilateral agreement, she asked Hitselberger whether he would guarantee her three months of employment.  Undisputed trial testimony revealed that the following conversation occurred between Fox and Hitselberger:

> She said, "Will you guarantee me three months?"  And I said, "I can't guarantee you any time at all you know that."  And then she laughed and said, "Well, it was worth a try."

Trans. Vol. II at 251.

While serving as director of sales, Fox and her department exceeded budgeted sales targets in nearly all categories. She also successfully negotiated a lucrative contract with United Airlines for flight crew rooms. If she had not been terminated, Fox would have received substantial commissions from the United contract. Despite the fact that Fox exceeded her sales targets in many areas, T-H maintains that she "exhibited persistent performance problems and unprofessional behavior." Appellant's Br. at 5. On many occasions, Ms. Fox failed to follow up on outside sales call reports brought in by her sales staff. The hotel was plagued by overbookings and improper utilization of the group rooms control log, which was designed to curtail this problem.[2] Hotel management also felt that Fox did not manage or motivate junior members of the sales staff adequately. Indeed, Fox's sales staff complained to hotel management about mistreatment by Fox as well as her unprofessional behavior in front of customers. In addition, Fox failed to submit accurate, legible, and timely reports in accordance with hotel requirements. Fox even admitted that she was counseled by her supervisors on several occasions about these problems and received written admonitions on at least two occasions. Trans. Vol. II at 62-63, 66-70, 73; Memorandum from Hitselberger to Fox (Sept. 22, 1992), at 1 (first written warning); Memorandum from Miley to Fox (Nov. 30, 1992), at 1 (second written warning). T-H terminated Fox's employment on December 11, 1992. This lawsuit was filed a short time later.

**II.**

We review <u>de novo</u> the denial of a motion for judgment as a matter of law, applying the same standards as the district court. <u>National Farmers Union Standard Ins. Co. v. Souris River Tel.</u>

---

[2]If an overbooking occurs, T-H must turn customers away from the Days Inn and "walk" them to a competitor hotel where they are put up at T-H's expense.

<u>Mutual Aid Coop.</u>, Nos. 94-3777, 95-1087, 95-1214, slip op. at 8 (8th Cir. Jan. 31, 1996). A motion for judgment as a matter of law presents a legal question to the district court, in the first instance, and to this Court on review: "whether there is sufficient evidence to support a jury verdict." <u>White v. Pence</u>, 961 F.2d 776, 779 (8th Cir. 1992). Judgment as a matter of law is proper when the nonmoving party has not offered sufficient evidence "to support a jury verdict in his or her favor." <u>Abbott v. City of Crocker</u>, 30 F.3d 994, 997 (8th Cir. 1994). In making our determination, we view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all favorable inferences that reasonably can be drawn from the evidence. <u>Id.</u> This Court will not set aside a jury's verdict lightly, <u>Nicks v. Missouri</u>, 67 F.3d 699, 704 (8th cir. 1995), nor will we "engage in a weighing or evaluation of the evidence or consider questions of credibility," <u>Keenan v. Computer Assocs. Int'l, Inc.</u>, 13 F.3d 1266, 1268-69 (8th Cir. 1994). We conclude that Fox failed to present sufficient evidence at trial to withstand T-H's motion.

In Minnesota, the "usual employer-employee relationship is terminable at the will of either" party. <u>Cederstrand v. Lutheran Bhd.</u>, 117 N.W.2d 213, 221 (Minn. 1962). This means that the employer can summarily dismiss an employee for any reason or no reason at all, and similarly the employee is under no obligation to remain on the job. <u>Corum v. Farm Credit Servs.</u>, 628 F. Supp. 707, 712 (D. Minn. 1986). There is a "strong presumption" of at-will status in Minnesota. <u>Spanier v. TCF Bank Sav.</u>, 495 N.W.2d 18, 21 (Minn. Ct. App. 1993).

Relying on the doctrine of promissory estoppel, Fox argues that her employment with T-H was not at will, but instead was "permanent" and terminable only for cause. Promissory estoppel is an equitable remedy that "may be used to enforce a promise of employment where no express contract of employment exists." <u>Eklund v. Vincent Brass and Aluminum Co.</u>, 351 N.W.2d 371, 378 (Minn. Ct.

App. 1984) (citing <u>Grouse v. Group Health Plan, Inc.</u>, 306 N.W.2d 114, 116 (Minn. 1981)).  To prevail on a claim of promissory estoppel under Minnesota law an employee must show three things: (1) that the employer made a clear and definite promise to the employee; (2) that the employer intended to induce the employee to rely on the promise and that the employee did so rely; and (3) that an injustice will occur unless the promise is enforced.  <u>See</u> <u>Ruud v. Great Plains Supply, Inc.</u>, 526 N.W.2d 369, 372 (Minn. 1995) (citing <u>Cohen v. Cowles Media Co.</u>, 479 N.W.2d 387, 391 (Minn. 1992)).  In this case, the first element of a promissory estoppel claim is entirely absent.  Fox produced no evidence that T-H made a clear and definite promise of continued employment terminable only for cause.  Her evidence thus was insufficient as a matter of law to overcome Minnesota's strong presumption of at-will employment, and T-H therefore was entitled to judgment as a matter of law.

Fox argues that the conduct of the parties shows that T-H made a clear and definite promise to her.  Appellee's Br. at 18.  She points to her successful three-year history with Tollman-Hundley Hotels in Denver and her successful completion of a three-and-one-half-month probationary period as temporary director of sales in Minnesota.  <u>Id.</u> at 18-19.  Fox fails to explain, however, how these events supply evidence that T-H made a clear and definite promise to her of continued employment terminable only for cause.  "A long term of service and good performance review do not, by themselves, justify an implied contract term for continued employment." <u>Corum</u>, 628 F. Supp. at 715; <u>see also</u> <u>Dumas v. Kessler & Maguire Funeral Home, Inc.</u>, 380 N.W.2d 544, 546 (Minn. Ct. App. 1986).  Fox's successful past performance thus is not evidence of a clear and definite promise of continued employment terminable only for cause.

Fox also points to a number of statements made by T-H, claiming that these representations are clear and definite enough to support her claim of promissory estoppel.  She draws our

attention to the fact that Hitselberger characterized the director of sales position as "permanent." This statement does not constitute a clear and definite promise of continued employment terminable only for cause. It has long been the law of Minnesota that an employer's use of the terms "permanent employment," "life employment," or employment "as long as the employee chooses" creates only an indefinite general hiring terminable at the will of either party. Skagerberg v. Blandin Paper Co., 266 N.W. 872, 874 (Minn. 1936); accord Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983); Harris v. Mardan Business Systems, Inc., 421 N.W.2d 350, 354 (Minn. Ct. App. 1988). We think it is abundantly clear that Hitselberger simply used the word "permanent" to draw a distinction between Fox's initial three-and-one-half-month temporary position and his later offer of employment which was "steady or continuing although nevertheless terminable at will," Friedman v. BRW, Inc., 40 F.3d 293, 296 (8th Cir. 1994) (quoting Pine River, 333 N.W.2d at 628-29)).

Likewise, Hitselberger's statements that the position would be "long term" and that Fox "would be part of the turnaround of the hotel" and that she could do very well for herself do not constitute clear and definite promises for continued employment terminable only for cause. See Aberman v. Malden Mills Indus., Inc., 414 N.W.2d 769, 771 (Minn. Ct. App. 1987) (holding "general statements of company policy are not definite enough"). Indeed, "[e]very utterance of an employer does not constitute an offer." Corum, 628 F. Supp. at 713 (citing Pine River, 333 N.W.2d at 630). Minnesota courts have found many statements that are more clear and definite than those made by Hitselberger to be insufficient to support a claim of promissory estoppel. For example, statements made by an employer that "I will always take care of you," "we are offering you security," and "[you will be a] lifetime sales representative" were not sufficiently clear and definite. Aberman, 414 N.W.2d at 771-72 (alteration in original). Similarly, the Minnesota Supreme Court held that an employer's telling his

employee to "stay with the ship" and consider his employment a "career situation" were insufficient to show a clear and definite promise. Degen v. Investors Diversified Servs., Inc., 110 N.W.2d 863, 865-66 (Minn. 1961); see also Corum, 628 F. Supp. at 714 (stating employee would have "job security" did not constitute clear and definite promise); Ruud, 526 N.W.2d at 371-72 (finding statement "good employees are taken care of" was not clear and definite promise); Dumas, 380 N.W.2d at 548 (finding statement that employer and employee would "retire together" was not clear and definite promise).

Fox attempts to distinguish Ruud, but otherwise does not even attempt to distinguish this line of cases. Instead, she relies on Rognlien v. Carter, 443 N.W.2d 217 (Minn. Ct. App. 1989), and Grouse, 306 N.W.2d at 116, two cases in which Minnesota appellate courts reversed the dismissal of promissory estoppel claims. Rognlien and Grouse, however, are easily distinguishable from the present case. In Rognlien, the Minnesota Court of Appeals reversed the summary dismissal of the plaintiff's promissory estoppel claim because "the employer had made a sufficiently clear and definite promise of long-term employment that summary dismissal of plaintiff's breach-of-contract claim was reversed as well." Friedman, 40 F.3d at 297 (discussing Rognlien). Specifically, the employer in Rognlien allegedly had assured the plaintiff that he "would not have to worry about his job so long as he did good work." Rognlien, 443 N.W.2d at 219. The Minnesota Court of Appeals held that the employer's statements would permit a jury to find that the employer had made "an offer of employment subject to dismissal only for good cause." Id. Thus, the court concluded that the plaintiff should be allowed to go forward on his unilateral contract claim and, as an alternative theory of recovery, also on his promissory estoppel claim. In the present case, however, there is no evidence that anyone ever told Fox that her employment by T-H would continue as along as she did good work. Hence, unlike the plaintiff in Rognlien, Fox has failed to create

a genuine issue of fact as to whether her employer made a sufficiently clear and definite offer of continued employment subject to dismissal only for good cause. Furthermore, the employer in Rognlien made statements assuring the employee about job security in response to the employee's expressed desire to secure long-term employment. In contrast, when Fox inquired whether her employment would be guaranteed for any minimum amount of time, Hitselberger's answer was that he could not guarantee her any time at all. For these reasons, Rognlien is inapposite.

Fox's reliance on Grouse also is misplaced. Grouse does not analyze the "clear and definite promise" component of a promissory estoppel claim. It focuses instead on the detrimental reliance element, which in this case we need not and do not reach.

On the other hand, the facts of Friedman v. BRW, Inc., another case governed by Minnesota law, are similar to the facts in this case. In Friedman, the plaintiff, having been fired, sued his former employer, BRW, Inc., on a promissory estoppel theory. We affirmed the district court's grant of summary judgment dismissing Friedman's complaint, concluding that BRW never made "a clear and definite promise of long-term employment terminable only for cause." Friedman, 40 F.3d at 297. Like Fox, Friedman moved from another state to Minnesota to accept a salaried position. Like Fox, Friedman did not receive any specific promise as to the duration of his employment. Like Fox, Friedman was told that the position was "permanent." Id. at 295. We fail to see any legally relevant differences between Friedman and this case.[3] Fox has failed to show that T-H made a clear and definite promise of

---

[3]Shortly after Friedman began work, BRW told him that his job was a "regular" as opposed to a "permanent" position. Although Fox attempts to distinguish Friedman on this basis, we find her argument unpersuasive. Describing a position as "permanent" does no more to take it out of the at-will category than does describing it as "regular." See, e.g., Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983).

-10-

continued employment terminable only for cause.  Without proof of such a promise, Fox, like Friedman, had "no reasonable basis for relying on anything other than an at-will relationship."  Id. at 297.

### III.

We hold as a matter of law that Fox failed to produce sufficient evidence of a clear and definite promise of continued employment terminable only for cause to overcome the strong presumption of at-will employment in Minnesota.  The jury verdict on her promissory estoppel claim therefore cannot stand, and T-H is entitled to judgment as a matter of law. Accordingly, the judgment of the District Court is reversed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-