# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1852
_____

Daniel Ayala

*Plaintiff - Appellant*

v.

CyberPower Systems (USA), Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 13, 2018
Filed: June 6, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case concerns a written agreement between Daniel Ayala and his former employer CyberPower Systems. CyberPower, a manufacturer and seller of power-supply products, hired Ayala in 2006 to serve as a vice president.

In 2012, Ayala drafted an agreement, entitled "Compensation Agreement," that purports to describe the "compensation plan for Dan Ayala" for his new position as Executive Vice President and General Manager for Latin America. The agreement details his salary and bonus structure. It states that the "plan will remain in place until sales reach $150 million USD," and under the heading "Employment terms," it says: "The above-mentioned agreement outlines the new salary and bonus structure to remain in place until $150 million USD is reached. It is not a multiyear commitment or employment contract for either party." CyberPower President Bob Lovett, General Manager Brent Lovett, and Ayala signed the Compensation Agreement. The parties agree that before the agreement, Ayala was an at-will employee.

Ayala was terminated before sales reached $150 million, and in 2015, he brought suit against CyberPower for breach of contract, fraud, and unpaid wages. He argued that the Compensation Agreement secured his employment until the $150 million sales threshold was met. CyberPower filed a motion to dismiss, arguing that the Compensation Agreement unambiguously did *not* modify Ayala's status as an at-will employee. The district court, adopting a magistrate judge's recommendation, denied the motion. In 2017, a different district court judge[1] granted summary judgment to CyberPower. The district court agreed with CyberPower that the Compensation Agreement unambiguously did not modify Ayala's at-will status, and it found further that even if ambiguity existed, the parol evidence sufficiently refuted Ayala's claim so as to warrant summary judgment for CyberPower. Ayala appealed.

"Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law." *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1279 (8th Cir. 1996). "We review a district

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party." *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 966 (8th Cir. 2017). The parties agree that Minnesota law governs the dispute.

Ayala's primary claim is for breach of contract. "To establish a breach-of-contract claim, a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract." *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006). Juries typically resolve ambiguities in contracts, and ambiguity exists when the contract's language is "reasonably susceptible to more than one interpretation." *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 180 (Minn. Ct. App. 2012). But "when the intention of the parties to a contract is ascertainable from the writing, construction is for the court." *Cherne Contracting Corp. v. Marathon Petroleum Co.*, 578 F.3d 735, 740 (8th Cir. 2009). To alter Ayala's status as an at-will employee, the parties agree that CyberPower must have "clearly intended" to do so by entering the Compensation Agreement. *See Gunderson v. All. of Comput. Prof'ls, Inc.*, 628 N.W.2d 173, 181-82 (Minn. Ct. App. 2001).

There is no ambiguity on the question whether CyberPower "clearly intended" to modify Ayala's at-will status with the Compensation Agreement. *See id*. The text of the agreement indicates that it governs only compensation. The agreement is entitled "Compensation Agreement." It describes the "compensation plan for Dan Ayala." It states that the "plan will remain in place until sales reach $150 million USD," but the agreement later reiterates that, rather than guaranteeing Ayala's employment, it sets out only his compensation until the sales threshold is met. It says that the "above-mentioned agreement outlines the new salary and bonus structure to remain in place until $150 million USD is reached. It is not a multiyear commitment or employment contract for either party."

-3-

Although the prior sentence supports CyberPower's contention that the agreement is not an "employment contract," Ayala argues that if one reads "multiyear" to modify "employment contract" in addition to "commitment," then the sentence merely states that the employment term ends on a condition (reaching $150 million in sales), rather than after a term of years. This reading makes little sense in context. The sentence preceding the one at issue and the title of the document, among other provisions, indicate that the agreement covers compensation—not the employment term. Reading "multiyear" to modify "employment contract" also makes the phrase largely superfluous. *See Econ. Premier Assur. Co. v. W. Nat. Mut. Ins. Co.*, 839 N.W.2d 749, 756 (Minn. Ct. App. 2013). The Compensation Agreement already says that it does not create a "multiyear commitment," and the agreement was obviously not an employment contract for a term of years. There would be no need to say that the agreement was not a multiyear employment contract. But, as this case illustrates, there was a need to attempt to clarify that the agreement covered only compensation.

Even if one accepts Ayala's stilted reading, however, the Compensation Agreement still does not have the requisite "clear" language to modify Ayala's status as an at-will employee. *See Gunderson*, 628 N.W.2d at 181-82 ("Typically, an employee must establish clear and unequivocal language by the employer evidencing an intent to provide job security."). The agreement's language, in other words, does not overcome the "strong presumption" of at-will employment under Minnesota law. *See Fox v. T-H Cont'l Ltd. P'ship*, 78 F.3d 409, 413 (8th Cir. 1996). Ayala cites *Kvidera v. Rotation Engineering & Manufacturing Co.*, 705 N.W.2d 416 (Minn. Ct. App. 2005), to support his reading of the agreement. He emphasizes that, like here, the employer and employee in *Kvidera* both signed the agreement that the Minnesota Court of Appeals found to modify an at-will relationship. *Id.* at 421. But the contract in *Kvidera* was entitled "Employment Agreement," specified a date that the agreement terminated, and addressed employment terms other than compensation.

-4-

*Id.* It also lacked provisions, like those in Ayala's agreement, confining its scope to compensation.

Three other arguments on the breach-of-contract claim are worth briefly addressing. *First*, Ayala argues that because the parties had already agreed to the compensation terms described in the agreement, the agreement would serve no purpose if it did not guarantee a term of employment. Ayala relies here on a faulty premise. In fact, he concedes that the agreement set out his bonus compensation for the first time. *Second*, Ayala and the dissent note that the agreement does not explicitly say that the relationship remains at will. But Minnesota law does not require a clear statement to continue at-will employment—it presumes such employment. *See Fox*, 78 F.3d at 413. What requires clarity is a modification to at-will employment, *see Gunderson*, 628 N.W.2d at 181-82, and the absence of an at-will provision and presence of "almost inscrutable terminology," *post* at 8, does not provide it. *Third*, Ayala emphasizes that the agreement complied with internal CyberPower procedures for modifying at-will employment. The agreement was in writing and included the signatures of Bob and Brent Lovett. The mere fact that the agreement contains those elements, however, does not mean that it modifies Ayala's at-will status. Those elements might be necessary, but they are not sufficient.[2]

---

[2]Although Ayala seems to disavow this argument in his reply brief, he claims in his opening brief that the agreement obligates CyberPower to "compensate [him] independent of his remaining an employee at the company." Unlike the cases he cites in support of this argument, however, no language in Ayala's agreement guarantees compensation after the termination of his employment. In a similarly half-hearted argument, Ayala claims that his appeal is supported by *Lamoureux v. MPSC, Inc.*, 849 F.3d 737 (8th Cir. 2017). But that case did not involve an employment dispute—a distinction that we were careful to make. *See id.* at 742. Finally, Ayala contends that the district court's ruling on the motion to dismiss supports his argument, but district

In short, we conclude that because the Compensation Agreement unambiguously did not modify Ayala's status as an at-will employee, CyberPower did not breach the agreement by terminating his employment. As a result, the district court did not err in granting summary judgment to CyberPower on the breach-of-contract claim.

Ayala's two remaining claims warrant less discussion. Ayala argues that even if CyberPower did not breach the Compensation Agreement, it committed fraud by promising a definite term of employment and then firing him before the completion of the term. The district court rejected this argument because Ayala submitted "no evidence in support of his claim and instead relie[d] on allegations raised in the amended complaint." On appeal, Ayala again offers no record support for his fraud contention, and because Ayala "must present affirmative evidence" to defeat summary judgment, we affirm the district court's grant of summary judgment on this claim. *See Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999). Ayala also brings a claim for unpaid wages under Minn. Stat. § 181.13. But he concedes that this argument "hinges" on his breach-of-contract claim. Because we affirm the district court's grant of summary judgment on the breach-of-contract claim, we reach the same result on the unpaid-wages claim.

For the foregoing reasons, we affirm.

BEAM, Circuit Judge, dissenting.

I readily concede that a duly selected jury fully apprised of the relevant facts and properly instructed in the law could have arrived at the result reached by the court

_____

courts can reconsider earlier rulings "to avoid later reversal." *See Conrod v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997).

-6-

today and by the very able trial court below. Since that circumstance did not occur, I dissent.

Daniel Ayala began working for CyberPower in 2006 as Vice President Worldwide Channel, specifically in charge of CyberPower's value added reseller channel. The written employment agreement specified that he was to be an at-will employee.

Ayala performed well as vice president of the value added channel, increasing sales from virtually nothing to nearly $50 million in annual sales by 2012. In part because of his sales successes, the parties executed another written employment agreement in late 2007 that clarified that the president or *a vice president* of CyberPower could alter the "at-will status" of the position.

Ayala received several substantial pay raises during this period and he made no secret of the fact that he aspired to become president of the company–when the original president, Robert Lovett decided to retire. And, Ayala asserts that Lovett assured him he would be considered for the position. But when Lovett retired in 2012, his son Brent was chosen as his successor.

At that point, Ayala decided to leave the company for a similar position within the industry. The Senior Lovett, however, persuaded Ayala to stay to mentor Brent, assuring him that if he stayed, Ayala would receive better compensation, a promotion and a written contract ensuring Ayala long-term employment. And, indeed, as noted by the court, Ayala was promoted to Executive Vice President and General Manager for Latin America with a tenure plan that would remain in place until "$150 million [in United States dollars] is reached." Ante at 2. This term presumably requires that CyberPower's sales reach $150 million valued in United States dollars, whatever

currency may have become involved in acquiring measurable sales. The contract language in no way specifies that it is an at-will contract, only that it is not a multi-year agreement, but arguably one that could be voided only "for cause."

Interestingly, the court, without analysis, would, in effect, turn this almost inscrutable terminology into an at-will clause in favor of CyberPower, notwithstanding the 2007 contract language to the contrary and the other bargaining vernacular also in contradiction that flowed between the parties.

The court concedes that the employment contract at issue is for Ayala's "new position as Executive Vice President and General Manager for Latin America." Ante at 2. Then, it contends that only the very minor portion of the contract dealing with a "compensation plan for Dan Ayala," ante at 3, contains language that applies to this current dispute.

To accomplish this unsupportable result, the court argues that "[t]he parties agree that *before* the [new] agreement, Ayala was [specifically] an at will employee." Ante at 2 (emphasis added). While true, that circumstance is irrelevant insofar as being proof of an at-will status for Ayala arising from the terms and conditions of this new Executive Vice President position. Indeed, it better proves the contrary. In previous contracts, the at-will language was expressly included. In this new agreement, at-will status is not mentioned. The 2007 agreement allowed abrogation of at-will status by company vice presidents. Thus, the better argument is that had the parties contemplated an at-will status in the new employment contract, the contract would have specifically said so. This circumstance is likely an ambiguity that will require a fact finder to resolve.

The parties etched the language of this new agreement on a clean slate. They had earlier agreed that a CyberPower vice president was empowered to determine the existence or not of an at-will status. Ayala concededly became an Executive Vice President in this new employment contract dated November 29, 2012. And, while the court and CyberPower argue that the new contract did not alter Ayala's earlier at-will status, this is clearly mistaken. The new employment contract's failure to specify at-will status for Ayala extinguished Ayala's at-will status. I find no precedent that supports the idea that an employee's extinguished at-will status automatically returns unless it is specifically abrogated in a new employment contract. Accordingly, the district court's grant of summary judgment in favor of CyberPower is reversible error.

I dissent.

_____